198 N.J. Super. 395 (1985)
487 A.2d 730
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FRED FURGUSON, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 7, 1984.
Decided January 22, 1985.
*398 Before Judges MICHELS, PETRELLA and BAIME.
Frank J. Soltis, designated counsel, argued the cause for appellant (Joseph H. Rodriguez, Public Defender, attorney; Frank J. Soltis, of counsel and on the brief).
Regina C. Caulfield, Assistant Prosecutor, argued the cause for respondent (John H. Stamler, Union County Prosecutor, attorney; Norman S. Karpf, Assistant Prosecutor, of counsel and on the brief).
The opinion of the Court was delivered by MICHELS, P.J.A.D.
Tried to a jury, defendant Fred Furguson, Jr., was convicted of first degree robbery in violation of N.J.S.A. 2C:15-1. He was sentenced to the custody of the Commissioner of the Department of Corrections for a 10-year term with a 3 1/2 year period of parole ineligibility pursuant to the provisions of the Graves Act, N.J.S.A. 2C:43-6(c), and assessed a penalty of $50, payable to the Violent Crimes Compensation Board. Defendant appeals.
*399 Defendant seeks a reversal of his conviction and the dismissal of his indictment with prejudice or, alternatively, the reversal of his conviction and a remand for a new trial, or a modification of his sentence by vacating the parole disqualifier on the following grounds set forth in his brief:
POINT I: THE TRIAL COURT'S REFUSAL TO GRANT EVEN A ONE-DAY ADJOURNMENT OF DEFENDANT'S TRIAL, WHERE DEFENDANT AND HIS RETAINED ATTORNEY HAD BEEN BOTH TAKEN BY SURPRISE BY THE TRIAL DATE, AND DEFENDANT, PREVIOUSLY INDIGENT, INCARCERATED, AND REPRESENTED BY THE PUBLIC DEFENDER HAD ACTED EXPEDITIOUSLY IN RETAINING PRIVATE COUNSEL UPON HIS RECEIPT OF SETTLEMENT PROCEEDS FROM AN UNRELATED CIVIL ACTION, WAS A VIOLATION OF DEFENDANT'S RIGHT TO COUNSEL.
POINT II: THE PROSECUTOR'S DELIBERATE MISCONDUCT AND HIS MISSTATEMENTS OF LAW AND FACT DENIED DEFENDANT A FAIR TRIAL.
(a) Prosecutor's deliberate misconduct in eliciting disclosure to the jury of the source of defendant's mugshot and the repeated suggestion that defendant was involved in some kind of criminal "incident" while allegedly in Bambergers, all against the express instructions of the trial judge, denied defendant a fair trial.
(b) Prosecutor's misstatement of the law concerning defendant's right to a fair pre-trial identification procedure; his expression of "prosecutor's expertise" in closing argument, couched in the form of "advice" as to what the jury should have been looking for in defendant's facial expression to determine his credibility; his repeatedly asking defendant's brother why he did not go to the authorities and tell them that defendant was innocent; and his misstatement of critical grand jury testimony relating to defendant's alibi defense denied defendant a fair trial. (NOT RAISED BELOW).
POINT III: POLICE INVOLVEMENT IN ANNA MASTROIANNI'S PRE-TRIAL IDENTIFICATION OF DEFENDANT WAS SO IMPERMISSIBLY SUGGESTIVE AS TO MAKE HER IDENTIFICATION UNRELIABLE, AND IT SHOULD HAVE BEEN EXCLUDED; AND HER IN-COURT IDENTIFICATION LIKEWISE SHOULD HAVE BEEN EXCLUDED AS TAINTED AND LACKING AN INDEPENDENT BASIS.
POINT IV: THE PRETRIAL IDENTIFICATION PROCEDURES INVOLVING JAMES BURKE'S IDENTIFICATION OF DEFENDANT WERE IMPERMISSIBLY SUGGESTIVE AND TAINTED HIS IN-COURT IDENTIFICATION; AND FAILURE TO ADEQUATELY PRESERVE DISPLAY S-3ID PENDING TRIAL SHOULD HAVE PRECLUDED ITS USE AT TRIAL.
POINT V: THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTOR TO QUESTION DEFENDANT ON CROSS-EXAMINATION AS TO WHETHER HE OWNED A GUN HOLSTER, THE QUESTION BEING *400 HIGHLY PREJUDICIAL AND OF NO PROBATIVE VALUE UNDER THE FACTS OF THIS CASE.
POINT VI: INTRODUCING INTO EVIDENCE THE MUGSHOT PHOTOGRAPHIC DISPLAY (S-1), WHICH INCLUDED DEFENDANT'S PHOTOGRAPH (S-1A), WAS REVERSIBLE ERROR AS THE MUGSHOTS WERE UTTERLY LACKING IN PROBATIVE VALUE IN THIS CASE, AND WERE INADMISSIBLE EVIDENCE OF OTHER CRIMES.
POINT VII: THE TRIAL COURT'S REFUSAL TO ALLOW DEFENDANT TO TESTIFY AS TO HOW THE POLICE HAD ACQUIRED ONE OF THE MUGSHOTS OF HIM, AND THAT THE CHARGES RELATED TO THAT MUGSHOT HAD BEEN DISMISSED, WAS REVERSIBLE ERROR UNDER THE CIRCUMSTANCES OF THIS CASE.
POINT VIII: THE PROSECUTOR'S IMPROPER ATTEMPTS TO INFLUENCE THE GRAND JURY BY OFFERING HIS OWN APPRAISAL OF THE CREDIBILITY OF DEFENDANT'S ALIBI WITNESSES AND THE PROSECUTOR'S MISSTATEMENTS OF FACT COMPROMISED THE INTEGRITY OF THE INDICTMENT (NOT RAISED BELOW).
POINT IX: THE TRIAL COURT ERRED IN NOT ORDERING THE ENTRY OF A JUDGMENT OF ACQUITTAL SUA SPONTE (NOT RAISED BELOW).
POINT X: APPLICATION OF THE INCORRECT DEFINITION OF "FIREARM" AND INADEQUATE PROOF THAT A FIREARM WAS IN FACT INVOLVED IN THE PRESENT CASE RENDERED THE GRAVES ACT INAPPLICABLE.
POINT XI: ALL OF THE ERRORS IN THE TRIAL, TAKEN TOGETHER, DEPRIVED DEFENDANT OF A FAIR TRIAL AND OF DUE PROCESS OF LAW (NOT RAISED BELOW).
We have carefully considered these contentions and all the arguments advanced by defendant in support of them and find that they are clearly without merit. R. 2:11-3(e)(2). However, some further comment is necessary with respect to defendant's claim in Point I, supra, that the trial court's denial of his request for an adjournment was a clear abuse of discretion and resulted in a denial of his constitutional right to counsel of his own choice.
The Sixth Amendment, applicable to the states by virtue of the Fourteenth Amendment, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), guarantees that in a criminal prosecution the "accused shall enjoy the right ... to have the Assistance of Counsel for his defense." Our State Constitution guarantees nothing less. N.J.Const.Art. I, *401 ¶ 10. See State v. Fusco, 93 N.J. 578, 583 (1983); State v. Sugar, 84 N.J. 1, 15-17 (1980). An essential element of the constitutional right to the assistance of counsel is the right of a defendant to secure counsel of his own choice. Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954); Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). However, the right to retain counsel of one's own choice is not absolute, United States ex rel. Carey v. Rundle, 409 F.2d 1210, 1215 (3d Cir.1969), cert. den. sub nom. Carey v. Rundle, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970); State v. Reddy, 137 N.J. Super. 32, 35 (App.Div. 1975), and "cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice and deprive such courts of the exercise of their inherent powers to control the same." Smith v. United States, 288 Fed. 259, 261 (D.C. Cir.1923). See also, United States v. Burton, 584 F.2d 485, 489 (D.C. Cir.1978), cert. den. 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979); Linton v. Perini, 656 F.2d 207, 209 (6th Cir.1981), cert. den. sub nom. Perini v. Linton, 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318 (1982); Lee v. United States, 235 F.2d 219, 221 (D.C. Cir.1956).
A defendant desiring to exercise the right to choose his own counsel must do so with reasonable diligence. State v. McCombs, 171 N.J. Super. 161, 165 (App.Div. 1978), aff'd 81 N.J. 373 (1979). The efficient administration of justice without unreasonable delay has great force and effect. The public has a strong interest in the prompt and effective operation of its judicial institutions. A trial court therefore must have the power to tightly control its own calendar so that the assignment of cases cannot be manipulated by the defense counsel or the defendant. See Linton v. Perini, supra. Consequently, when a defendant fails to act expeditiously in obtaining counsel of his own choice, the trial court must have the power to "do what is reasonably necessary to meet the situation." State v. Yormark, 117 N.J. Super. 315, 340 (App.Div. 1971), modif. in part 61 N.J. 202 (1972), cert. den. sub nom. Perwin v. New Jersey, 409 U.S. 862, 93 S.Ct. 151, 34 L.Ed.2d 109 (1972). See also, State v. *402 Reddy, supra, 137 N.J. Super. at 35-36. The procedure that may generally be employed where defendant seeks to change counsel is to allow a reasonable adjournment to permit the defendant to retain counsel of his own choice. The granting of a continuance necessarily rests within the sound discretion of the trial court, and the exercise of that discretion will not constitute reversible error in the absence of a showing of an abuse of discretion causing defendant a manifest wrong or injury. State v. Lamb, 125 N.J. Super. 209, 213 (App.Div. 1973); State v. Smith, 87 N.J. Super. 98, 105 (App.Div. 1965).
What constitutes a reasonable adjournment to permit a defendant to retain counsel of his own choice depends generally upon the surrounding facts and circumstances. One of the leading cases on the subject is United States v. Burton, supra, where the court commented on the factors to be considered in determining whether a reasonable delay is warranted:
Some of the factors to be considered in the balance include the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case. [584 F.2d at 490-491].
When a defendant applies for an adjournment to enable him to substitute counsel, the trial court must strike a balance between its inherent and necessary right to control its own calendar and the public's interest in the orderly administration of justice, on the one hand, and the defendant's constitutional right to obtain counsel of his own choice, on the other.
Applying the factors discussed in United States v. Burton, supra, we are satisfied that the trial judge did not mistakenly exercise his discretion by denying defendant's request for an adjournment and did not violate defendant's Sixth *403 Amendment rights. The record shows that on May 1, 1982, defendant was arraigned on a charge of first degree robbery allegedly committed on March 21, 1982. Defendant was represented by William P. Cucco, Jr., (Cucco), a member of the bar of the State of New Jersey and an Assistant Deputy Public Defender in the Office of the Public Defender. On June 1, 1982, the case was pretried and marked ready for trial. Cucco agreed that he would complete his pretrial investigation by June 11, 1982. The case received a tentative trial date of July 6, 1982, and Cucco indicated that he would be ready to try the case at that time.
Apparently the case was not reached on July 6, 1982. The trial judge, who was scheduled to go on vacation commencing July 12, 1982, spoke with the prosecutor and Cucco before doing so and learned from both of them that the case was still ready for trial and that they were prepared to try it in his absence. Since this was a jail case and the only jail case on the trial judge's calendar, it was sent to the acting criminal assignment judge so that the latter could assign it out to another judge for trial as scheduled. When the case was called there apparently were no trial judges available to try the case. The acting criminal assignment judge therefore marked the case as ready and scheduled it for July 26, 1982, to accommodate Cucco's vacation plans. When the trial court did not reach the case during the week of July 26, 1982, the court carried it further to accommodate the prosecutor's vacation plans (although the prosecutor indicated that someone else in his office was prepared to try the case in his absence). On August 10, 1982, when the trial judge returned from vacation and learned that the case had not been tried, he immediately notified the prosecutor and Cucco in writing that the trial would be held on August 30, 1982.
A few days prior to August 30, 1982, Cucco advised the trial judge that defendant had retained or intended to retain as private counsel Bernard J. Czech (Czech), a member of the bar of New Jersey. This conversation represented the only knowledge *404 that the trial judge had that defendant intended to retain another attorney to replace Cucco until Czech made his application to be substituted for Cucco on the day of trial. Czech never informed the trial judge directly nor did he make any application to be substituted as counsel for defendant prior to that time.
On August 30, 1982, when the trial judge called the case for trial, Czech appeared and for the first time informed the trial judge of his intention to replace Cucco. Czech explained to the trial judge that he had met with defendant, who at the time was in jail, on August 19, 1982, and that defendant had then decided to retain him. Defendant allegedly had obtained the funds to pay for a private attorney as a result of the recent settlement of a civil matter. After being retained Czech, without moving to be substituted as the attorney for defendant, appeared before the trial judge handling bail applications and succeeded in obtaining a reduction in defendant's bail. On August 23, 1982, Czech also represented defendant in a proceeding before the Newark Municipal Court.
Notwithstanding Czech's on-going representation of defendant, Czech did not inform either the trial court, the prosecutor or the Public Defender's office of his retention as defendant's attorney or move to be substituted as attorney for the defendant until the scheduled day of trial. Moreover, armed with the knowledge that defendant had been in jail awaiting trial and that a new court term was about to commence, Czech did not even communicate with the trial judge, the criminal assignment judge or his clerk, the prosecutor's office or the Public Defender's office to ascertain whether a trial date had been set and, if so, when the case was scheduled for trial. There cannot be any question that an attorney seeking to be substituted for another attorney in a matter has the responsibility at the time he is retained or as soon thereafter as possible to ascertain the status of the case on the court's calendar. In this regard, Czech conceded that he may have been "a little derelict" *405 in failing to reach out for the prosecutor the week before the trial.
Before the trial judge Czech alleged that he had not learned of the trial date until that Monday morning, August 30, 1982, when during a proceeding in the Perth Amboy Municipal Court he received a call that the case was ready for trial. Czech explained that defendant had not learned of the trial date until told by his father late Friday afternoon, August 27, 1982. Defendant had tried to call Czech, but it was after 5:00 and everyone had left the office for the day. Czech himself went away for the weekend and therefore was unavailable. According to the record submitted on this appeal, it appears that Cucco sent a letter to defendant notifying him of the trial date. When Cucco did not receive a reply from defendant, he (Cucco) attempted to reach defendant by telephone on August 27, 1982. Cucco failed to reach defendant, but he did speak with defendant's father and informed him of the trial date.
On August 30, 1982, the scheduled trial date, the case had stood as a ready case for over a month-and-a-half. The State had its witnesses available in court and was ready to proceed. Czech, who admitted that he was not prepared to try the case, requested a month's adjournment. Czech informed the trial judge that he would probably be ready to try the case on September 13, but also allowed that he had "a couple of trials in September, they're set down pre-emptively...." He further informed the trial judge that he had "two trial calls on September 13" and because of the "coming weekend being a holiday weekend and a long weekend" he had "made arrangements to be out of the State for the weekend." The trial judge denied defendant's request for adjournment and ordered the trial to proceed, reasoning in part:
I'm now asked to delay the trial for [a] reasonable period of time to allow a new attorney to become acquainted with it and to step into the picture.
I am not disposed to grant that request in these circumstances. Frankly, this was my trial for today, and I would not have anything to do otherwise; but, that's not the main factor.

*406 The main factor is that this has been a ready case, and Mr. Furguson has known since July, for a good month-and-a-half that this is a ready case. And, I do not think now, when the State has its witnesses here, has gone to some difficulty in assembling them during the week before Labor Day, that it should then be put to having to reschedule all of this next month, particularly when no one saw fit officially to make a request, or advise the Court before today.
This is not, in any sense, in my mind, a deprivation of a right that Mr. Furguson possesses. He's been found to be qualified for public defender representation; he has been assigned a very competent, able, and experienced Public Defender to represent him. I don't think his interests in any way, are harmed by this decision; but, under the circumstances I do not think a delay is in order.
The trial judge thereafter denied Czech's request that the case be carried until the following morning, August 31, 1982, and ordered defendant to proceed to trial with Cucco as his attorney.
In the circumstances here present the defendant's request for a continuance would have further delayed the trial, thereby imposing unnecessary and unreasonable burdens on the judicial system, as well as the State and its witnesses. Further delays and calendar problems would necessarily follow if an adjournment were granted in such circumstances. Such delays undermine the effective and efficient administration of justice and inure to the detriment of the public.
Moreover, the need for the requested adjournment arose in the first instance from Czech's and his client's neglect. Neither defendant nor his privately retained attorney Czech gave either the trial judge, the prosecutor or the Public Defender's office notice of the attempted substitution of counsel. No leave of court was sought pursuant to R. 1:11-2 for the Public Defender to withdraw and the newly retained attorney to be substituted in his place until the day scheduled for trial. R. 1:11-2 reads in part:
1:11-2. Withdrawal or Substitution
After the entry of a plea in a criminal action or after the pretrial conference or the fixing of a trial date, whichever is earlier in a civil action, an attorney may withdraw from the action only by leave of court on written notice to all parties. Prior to such time, he may withdraw without leave of court if his client consents.
*407 The obvious purpose of R. 1:11-2 is to "prevent delay and calendar problems." RALPH N. DEL DEO, NEW JERSEY PRACTICE  VOL. I  COURT RULES ANNOTATED, at 169 (3rd ed. 1969). Private counsel's conduct herein undisputably risked delay and interference with the court calendar.
Finally, and equally important, defendant had competent, experienced counsel available and prepared to try the case and no complaint has been raised on this appeal that Cucco's representation was inadequate or that defendant was not afforded the reasonable effective assistance of counsel guaranteed him under the Constitution. See Strickland v. Washington, ___ U.S. ___, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Affirmed.