**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1677-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

QUENTON C. JACKSON,

    Defendant-Appellant.

_____

Argued May 2, 2018 — Decided July 10, 2018

Before Judges Alvarez and Geiger.

On appeal from Superior Court of New Jersey,
Law Division, Ocean County, Indictment No.
14-03-0622.

Clifford P. Yannone argued the cause for
appellant (Starkey, Kelly, Kenneally,
Cunningham & Turnbach, attorneys; Clifford P.
Yannone, on the brief).

Shiraz Imran Deen, Assistant Prosecutor,
argued the cause for respondent (Joseph D.
Coronato, Ocean County Prosecutor, attorney;
Samuel Marzarella, Chief Appellate Attorney,
of counsel; Shiraz Imran Deen, on the brief).

PER CURIAM

Defendant Quenton C. Jackson appeals from a January 3, 2017 order denying his motion for a new trial. Defendant, convicted of second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b), was sentenced on November 16, 2016, to a five-year term of imprisonment subject to five years of parole ineligibility.

The court granted defendant's request that he be permitted to represent himself on April 19, 2016, after a comprehensive Faretta[1] hearing. The judge did, however, direct defendant to apply to the Office of Public Defender for standby counsel. The application was granted, and defendant had standby counsel available throughout the proceedings.

Jury selection was completed on July 26, 2016. The following day, defendant failed to appear. Since defendant had been admitted to Monmouth Medical Center,[2] the judge adjourned the trial until August 2, 2016.

On August 1, 2016, defendant failed to contact the court, as he had been instructed, or to produce the documentation to corroborate his hospitalizations, and a bench warrant issued for

---

[1]  Faretta v. California, 422 U.S. 806 (1975).

[2]  In the transcripts of the proceedings, Monmouth Medical Center is referred to by its former name, the Paul Kimball Hospital.

his arrest.  He was located on August 2, at Ocean Medical Center,[3] just after he had been discharged.  Trial resumed, and the jury convicted defendant.

The facts leading to the charge can be described briefly. Ocean County Prosecutor's Office Special Operations Group detectives executed a warrant at defendant's residence related to an ongoing drug distribution investigation.  Officers recovered a loaded black 9mm semi-automatic pistol from a sock hidden in a recess near defendant's kitchen cabinets.  Several practice range shooting targets hung on a wall.

The detectives conducted a taped interview after defendant signed a Miranda[4] waiver.  He admitted that he lived alone in the home, but denied any knowledge regarding the handgun.  When asked about the target practice sheets hanging on the wall, defendant responded that he had brought them home from a shooting range where he uses 40mm rounds.

At the August 2 proceeding, the judge and defendant engaged in the following exchange:

> THE COURT: [Defendant], you are present.
> We have had to have the Sheriff's Department
> bring you in.  It is 11:30.  I believe they
> had you here at around 11.  Good morning.  We

---

[3]  In the transcripts, Ocean Medical Center is referred to as Brick Hospital.

[4]  Miranda v. Arizona, 384 U.S. 436 (1966).

provided you with some water.  Anything you would like to say at this point in time?

[DEFENDANT]: Yeah, Your Honor.  I'm not feeling well.

THE COURT: Uh-huh.

[DEFENDANT]: The Sheriffs came and got me out of the hospital.  That's where I was at.  The day that you called me for documents, I couldn't get that to you because I was in the hospital at the time, too.

THE COURT: All right.  Well, do you have any proof that you were in the hospital or anything?

[DEFENDANT]: Yes.

THE COURT: Well, you can provide that to the [c]ourt.  And I understand from my officers that you were released from the hospital, you were not admitted.

[DEFENDANT]: Released today.  That was today.

THE COURT: Excuse me, I'm talking.
That they in fact found you at Brick Hospital after they had been to your house last night; after they had been to your house that you had given us your address this morning.  That you were not at either place.  That you were not at Paul Kimball Hospital this morning where your parents thought you were.  And that they finally tracked you down at Brick Hospital.
I'm informed by them that you were not admitted to the hospital and that you have been discharged from the hospital.  And I have no proof that you are not capable of continuing with this trial.
For the record, you did not in any way comply with my instructions, both to you by

4

leaving a message on your phone as well as speaking with your girlfriend on a number of occasions, to provide the [c]ourt with proof that you in fact were admitted to a hospital and that you in fact had some diagnosis that would not allow you to continue with the trial.

You are here this morning and we are ready to proceed.

Defendant contended he could not proceed:

THE COURT: Do you understand that, [defendant]?

[DEFENDANT]: No, Your Honor.

THE COURT: You don't. All right. What part don't you understand?

[DEFENDANT]: I don't understand none of this. I'm ill right now and I don't know why I'm here. I just got out of the hospital.

THE COURT: You're here because you started the trial and you've been discharged from the hospital.

[DEFENDANT]: I've been back to the hospital.

THE COURT: And you haven't communicated with the [c]ourt in any way, shape or form since last Wednesday.

[DEFENDANT]: Well, I was in the hospital last night, I was in the hospital today.

THE COURT: You've been discharged from the hospital, sir.

[DEFENDANT]: I was in the hospital last night.

5

THE COURT: You've been discharged from the hospital this morning, sir.

[DEFENDANT]: And I was in the hospital in Bricktown today.

THE COURT: You've been discharged this morning.

[DEFENDANT]: Where I got picked up. That's where I got picked up.

THE COURT: So you're not going to stipulate that that document shows that you had a prior conviction in 2003 which can be demonstrated to the jury to indicate that you are a prior felon under the statute? Am I correct in assuming that?

[DEFENDANT]: I can't tell you anything right now, sir. I'm not in my right state of mind, so.

THE COURT: All right. For the record, the [c]ourt is looking at the defendant and he appears to be sitting sort of properly in his chair. He is dressed as he was dressed the first day in what appears to be jeans and sneakers and a shirt at this time.

During the <u>Miranda</u> hearing, defendant again claimed he was unable to proceed:

THE COURT: [Defendant], any objection to the [p]rosecutor playing a redacted version? A version that doesn't have many things that are in this past statement, I assume. . . . You shook your head no, does that mean no, [defendant]?

[DEFENDANT]: I can't even -- I can't concentrate. I can't say. I plead the Fifth, Your Honor.

6

THE COURT: Okay. You can plead the Fifth. The [c]ourt, for the record, indicates that [defendant], when the portion came up about the gun I was observing [defendant], his eyes became completely wide open, he became interested in what was being said on the video.

When asked to comment about the proposed redactions, defendant and the judge had the following exchange:

THE COURT: [Defendant], any comment on any of that?

[DEFENDANT]: Yes, Your Honor. I can't represent myself right now at this point.

THE COURT: And why is that, sir?

[DEFENDANT]: Because I can't think clearly. My blood pressure is probably through the roof right now and anxiety, so.

THE COURT: Well, I appreciate that. I'm observing you all this time. You do not appear to be in any distress whatsoever.

[DEFENDANT]: That's your opinion, Your Honor.

THE COURT: Yes, it is.

[DEFENDANT]: That's your opinion.

THE COURT: And I'm just placing on the record that I'm observing you and that is absolutely my opinion.

When asked if he wanted to continue to represent himself, or was willing to allow standby counsel to "step in," defendant responded that he would prefer to retain his own attorney. The

7

court observed that defendant's similar request had been denied the prior week, and that the issue had arisen back in January. When the January request was made, defendant had contacted an attorney, but had not actually retained her. Because the lawyer had not yet been retained, the judge refused her request for an adjournment since the jury was "on its way over to begin [the] trial."

Defendant reiterated he could not proceed because of his health, and the judge denied his request for postponement. Defendant insisted that he could not stand when he addressed the judge because he might faint "[f]rom the pressure, the high blood pressure, the anxiety." The judge observed that defendant was physically able to fully participate and had repeatedly expressed his concerns on the record in a manner that corroborated the judge's perspective that he was fit to proceed. The judge added: "I am again placing on the record that I continue to observe you and I feel [you are] competent to continue at this time."

The medical and hospital documentation defendant provided in support of his application for a new trial stated that he suffered from anxiety, depression, panic attacks, and high blood pressure. Although defendant had gone for treatment to two different hospitals, both discharged him after an overnight stay. The medical documents included summaries finding defendant to be

8

generally in normal health, not in need of further hospitalizations.

In ruling on the motion for a new trial after review of the documents, the judge held defendant was not prejudiced by being compelled to try the matter despite his alleged health problems. The judge said:

> [T]he totality of the circumstances and the events that occurred, including what transpired before the trial, what transpired with the [c]ourt's impression that there was a delay tactic going on by the defendant in firing a very competent attorney who had obtained, in the [c]ourt's opinion, a plea bargain that was beneficial, noting all of the evidence that was presented against [defendant], and he denied or decided to not take the deal. That he then went into a delay mode after that and did everything he could after that to try to delay this trial.

> So I find that, while the motion is appropriate, it is out of time. But I will still, for the record, indicate that I am denying it both for that reason as well as for the reasons given as far as that I do not find that there was any prejudice to [defendant]. That I do not find that there has been any medical evidence submitted that would show that [defendant] in fact was not able to participate from a competency standpoint, from an ability to understand what was going on, from an ability to represent himself in this case. To understand that he had the right and the ability to question the standby attorney that the [c]ourt had appointed, to use the services of that attorney if he had any questions.

And I also find that, clearly, based on my observations and personal observations of the defendant during the trial, that he was more than capable and appropriate in preparing his defense and presenting his defense and in executing both his opening and closing statements, his objections to evidence and all things that an attorney would have done on his behalf.

Could he have been represented better with respect to certain things if he had an attorney? I think that's probably true. But the [c]ourt does not feel that he has the right now to come back and say that certain things were not done properly because he was not familiar with court rules and things like that and that he was too sick to continue. I think his own reactions, his own demeanor proved that he was capable of proceeding to trial at that time. So I deny all of the requests that were made on behalf of the defendant at this time.

On appeal, defendant raises the following points:

POINT I
THE TRIAL COURT ERRED IN DENYING APPELLANT'S APPLICATION TO POSTPONE THE TRIAL BECAUSE HE HAD EXPERIENCED MEDICAL ISSUES THAT DEEMED HIM UNFIT TO PROCEED AS AN INEXPERIENCED PRO SE LITIGANT THUS DENYING APPELLANT A FAIR TRIAL IN VIOLATION OF HIS DUE PROCESS RIGHTS.

POINT II
THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A NEW TRIAL PURSUANT TO R. 3:20-1 BECAUSE HE WAS REQUIRED TO PROCEED AS AN INEXPERIENCED PRO SE LITIGANT SUFFERING WITH MEDICAL ISSUES THAT PREJUDICED APPELLANT AND DEPRIVED HIM A FAIR TRIAL THUS CAUSING A MANIFEST DENIAL OF JUSTICE UNDER THE LAW.

I.

Whether to grant an adjournment of trial due to a defendant's health difficulties is a matter within the discretion of the trial court. State v. McLaughlin, 310 N.J. Super. 242, 259 (App. Div. 1989); State v. Kaiser, 74 N.J. Super. 257, 271 (App. Div. 1962). The trial court's decision "will not be deemed reversible error absent a showing of an abuse of discretion which caused defendant a 'manifest wrong or injury.'" McLaughlin, 310 N.J. Super at 259 (quoting State v. Furguson, 198 N.J. Super. 395, 402 (App. Div. 1985)).

According to the Kaiser court,

> Among those factors deserving consideration by the court in the exercise of its discretion are medical reports, personal observation of the accused, the effect of a continuance upon the State's ability to produce evidence at a subsequent date, and whether or not the accused will be better able to stand trial at a later time.
>
> [74 N.J. Super. at 271.]

We also consider "the clarity of the accused's testimony at trial and the conduct of the trial court in granting defendant periods of rest whenever . . . requested." Ibid. (citing State v. Pierce, 27 P.2d 1087, 1088 (Wash. 1933)).

Furthermore, a trial court's decision on a motion for new trial "shall not be reversed unless it clearly appears that there

11

was a miscarriage of justice under the law." R. 2:10-1. We defer to the trial court with respect to "intangibles" not transmitted by the record, including credibility and demeanor, but otherwise make our own independent determination of whether a miscarriage of justice occurred. Carrino v. Novotny, 78 N.J. 355, 360 (1979); Baxter v. Fairmont Food Co., 74 N.J. 588, 597-98 (1977); Dolson v. Anastasia, 55 N.J. 2, 6-8 (1969); Kimmel v. Dayrit, 301 N.J. Super. 334, 355 (App. Div. 1997) (quoting Caputa v. Antiles, 296 N.J. Super. 123, 138-39 (App. Div. 1996)).

## II.

Although framed as two separate points of error, defendant makes essentially the same argument as to both: that defendant's health mandated an adjournment. To the contrary, our review of the medical records supports the judge's conclusion that defendant's health did not warrant a postponement. No due process violation occurred because his application was denied. Defendant's health issues were not disabling, and although he attempted to be admitted into a second facility when discharged from the first, he was quickly discharged from that hospital as well. The trial judge repeatedly observed that defendant was responding throughout the trial as capably as could be expected from a self-represented litigant.

12                                                    A-1677-16T3

When we review the Kaiser factors, that analysis supports the trial judge's decision denying the motion for a new trial. The medical records documented that defendant's medical problems were not so serious as to impact his self-representation. The judge repeatedly observed that defendant's demeanor, attentiveness, and questions to witnesses established beyond question his ability to proceed. Although the State would suffer minimal prejudice in light of the nature of the charge, defendant's diagnosed conditions are chronic. An adjournment would not have made a significant change to defendant's anxiety, depression, and elevated blood pressure. Independently weighing the Kaiser factors, we conclude the judge did not err in denying defendant's motion for a postponement upon his return to court after the execution of the arrest warrant.

## III.

Defendant's motion for a new trial was made out of time. However, the judge nonetheless ruled on the merits. As we have said, the judge found that defendant's conduct during the trial was entirely appropriate. He denied the motion as untimely and on the merits, and both decisions are supported by the record and relevant precedent. The denial of the motion for a new trial was not a miscarriage of justice.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1677-16T3