**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4031-17T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ISAKOVA O. SEALY,

    Defendant-Appellant.

_____

        Submitted November 6, 2019 – Decided December 31, 2019

        Before Judges Accurso, Gilson and Rose.

        On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 16-06-0917.

        Arleo & Donohue, LLC, attorneys for appellant (Frank Paul Arleo and Gianna A. Bove, on the briefs).

        Esther Suarez, Hudson County Prosecutor, attorney for respondent (Alanna M. Jereb, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Isokova O. Sealy – a former correction officer – was charged in eleven counts of a forty-count indictment for his participation in a scheme to smuggle tobacco into the Hudson County Correctional Facility.[1]  Following a jury trial, defendant was convicted of third-degree pattern of official misconduct, N.J.S.A. 2C:30-7(a).  The jury acquitted defendant on two counts and was unable to reach a verdict on the remaining eight charges.  He was sentenced to a three-year prison term, with a two-year period of parole ineligibility.

Defendant appeals his conviction, raising the following points for our consideration:

> I. . . . DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO COUNSEL OF CHOICE WHEN THE TRIAL COURT ARBITRARI[]LY REFUSED HIS REQUEST FOR AN ADJOURNMENT TO RETAIN NEW PRIVATE COUNSEL.
> (Not raised below)
>
> II. THE TRIAL COURT'S FAILURE TO INDIVIDUALLY VOIR DIRE JUROR [NUMBER NINE] AND THE REMAINING MEMBERS OF THE JURY DENIED THE DEFENDANT HIS RIGHT TO A FAIR TRIAL.
> (Partially raised below)

---

[1]  Three inmates and their mothers were also charged in the indictment; their matters are not part of this appeal.

A-4031-17T1

III. DEFENSE COUNSEL'S FAILURE TO REQUEST INDIVIDUAL QUESTIONING OF THE ENTIRE JURY DURING DELIBERATIONS IN ADDITION TO HER FAILURE TO RAISE THE VOIR DIRE ISSUE ON DIRECT APPEAL VIOLATED DEFENDANT'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.
(Not raised below)

A. DEFENSE COUNSEL'S FAILURE TO REQUEST INDIVIDUAL QUESTIONING OF EACH MEMBER OF THE JURY DURING JURY DELIBERATIONS DEMONSTRATES HER SUBSTANDARD PERFORMANCE.
(Not raised below)

B. DEFENSE COUNSEL'S FAILURE TO RAISE THE VOIR DIRE ISSUE ON DIRECT APPEAL DEMONSTRATES HER SUBSTANDARD PERFORMANCE.
(Not raised below)

We are persuaded by some of the arguments defendant raises in points I and II, and – on the record before us – we are not convinced defendant received a fair trial because his request to adjourn the trial to retain new private counsel was summarily denied, and the trial judge thereafter failed to investigate allegations that a juror introduced extraneous information during jury

deliberations. We therefore reverse the conviction and remand for a new trial. In view of our decision, the contentions raised in point III are moot.[2]

## I.

We first consider defendant's argument that the judge referenced in point I (second motion judge) erred by summarily denying his request for an adjournment to substitute private counsel, without fully applying the governing law. In order to place the judge's findings in perspective, we summarize the procedural history from the brief proceedings before her and the first motion judge, who previously had denied defense counsel's request to be relieved of her representation of defendant.

## A.

Defendant was arrested in January 2016; retained counsel in February; indicted in June; and arraigned in July. His opportunity to enter into a plea

---

[2] Without reaching the merits of defendant's ineffective assistance of counsel argument, we nonetheless recognize the issues raised in point III are not ripe for direct appeal. Resolution of those issues – which may have been grounded in trial strategy – "lie[s] outside the trial record." State v. Preciose, 129 N.J. 451, 460 (1992). We also note the point headings incorrectly state the issues were not raised on direct appeal, as this is defendant's direct appeal.

agreement was "cutoff"[3] in December. Ten days before the initial March 7, 2017 trial date, the PJ granted defense counsel's request for an adjournment because counsel was on trial in another matter. The PJ scheduled a peremptory trial date for May 2, although defense counsel apparently had informed the PJ she would be on trial in another county on "the oldest case in the State[,]" with a client who, unlike defendant, was charged with murder and had "been in jail since 2012."

One month later, defense counsel moved to be relieved from her representation of defendant, citing his failure to communicate with her and pay for services she had rendered as of that date. Following oral argument on April 12, the first motion judge denied counsel's request, finding that the application was belated in view of the upcoming May 2 trial date, and defendant had expressed his desire for defense counsel to continue as his attorney.[4]

---

[3] See R. 3:9-3(g) ("After the pretrial conference has been conducted and a trial date set, the court shall not accept negotiated pleas absent the approval of the Criminal Presiding Judge (PJ) based on a material change of circumstance, or the need to avoid a protracted trial or a manifest injustice.").

[4] The record does not reflect that defendant was placed under oath before the inquiry was conducted.

Apparently, the May 2 trial date was postponed to July 12 because defense counsel was on trial in the murder case. On July 12, the PJ again granted defense counsel's request to postpone the trial, this time because counsel "was starting another trial." Defendant's trial was rescheduled to September 12.

On that day, defense counsel sought an adjournment before the second motion judge, again seeking to be relieved of her representation of defendant. Citing correspondence entitled "termination letter," which she had received from defendant one week earlier, counsel told the judge, "there's been a breakdown in communication that clearly will affect my ability to adequately and properly defend Mr. Sealy at this time, given the fact that he even phrased his letter that way and sent it to me." Among other things,[5] defendant's letter directed counsel "to send his file to his new attorney . . . ."

Defense counsel contacted defendant's potential new attorney, who indicated he and his partner "had spoken with the State, and that they did not . . . enter an appearance on this case or prepare a substitution of attorney . . . but

---

[5] Defendant also requested discovery and complained that counsel "had not contacted him to prepare for [the upcoming] trial." Counsel informed the judge that the file was "very voluminous," but she had made available to defendant all discovery she received from the State.

they would if [she] were to be relieved as counsel." Neither potential new attorney appeared at the hearing.

Defense counsel acknowledged her trial schedule in other matters caused defendant's trial to be delayed three times. Counsel also told the judge she had not spoken with defendant since May 2017, claiming she had previously "gone over this case numerous times" with him, and it was his obligation to contact her if he wished to discuss the case further. The prosecutor indicated he was prepared to proceed, but "underst[oo]d defense counsel's reservations [in] trying this matter." Accordingly, the prosecutor did not object to an adjournment, but rather "submit[ted] to the [c]ourt and [its] best judgment."

In a terse oral decision, the judge denied the application. Having noted during colloquy with defendant the failure of defendant's potential new counsel to appear in court that day, the judge directed her ruling to defendant:

> This case is an old case. You have competent counsel. [Defense counsel] is . . . well known here in our criminal courts, and is well versed to defend this case. You wanted her on this case and <u>begged this court before [the first motion judge]</u>, to keep her on there [sic]. That was long ago.
>
> And now we cannot just keep on switching [attorneys], because . . . [t]hat's known as a delay tactic. <u>Keep on changing attorneys</u>. Get another adjournment, another adjournment, and another adjournment.

> I cannot delay this case any longer. We [are] going to be picking a jury this afternoon. I'm ordering all parties to report before [the trial judge] . . . .
>
> [(Emphasis added).]

### B.

We commence our analysis with well-established principles, recognizing we review the trial court's denial of an adjournment request under an abuse of discretion standard. State v. Hayes, 205 N.J. 522, 537 (2011). It is axiomatic that criminal defendants are guaranteed the right to the assistance of counsel under the United States and New Jersey constitutions. State v. King, 210 N.J. 2, 16 (2012). An essential element is "the right of a defendant to secure counsel of his own choice." State v. Furguson, 198 N.J. Super. 395, 401 (App. Div. 1985). That right, however, is not absolute. Ibid. "The trial court must strike a balance between its inherent and necessary right to control its own calendar and the public's interest in the orderly administration of justice, on the one hand, and the defendant's constitutional right to obtain counsel of his own choice, on the other." Hayes, 205 N.J. at 538.

"What constitutes a reasonable adjournment to permit a defendant to retain counsel of his own choice depends generally upon the surrounding facts and circumstances." Ibid. (quoting Furguson, 198 N.J. Super. at 402). The

8

factors included in this determination are set forth in <u>United States v. Burton</u>, 584 F.2d 485, 490-91 (D.C. Cir. 1978), adopted by New Jersey courts in <u>Furguson</u>, 198 N.J. Super. at 402, and reiterated in <u>State v. Kates</u>, 216 N.J. 393, 396 (2014) (<u>Furguson</u> factors):

> the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case.

"If a trial court conducts a reasoned, thoughtful analysis of the appropriate factors, it can exercise its authority to deny a request for an adjournment to obtain counsel of choice." <u>Kates</u>, 216 N.J. at 396-97. "[A] lengthy factual inquiry is [not] required." <u>Id.</u> at 397.

But, the absence of such an "analysis results in a one-sided and, consequently, arbitrary determination." <u>State v. Martinez</u>, 440 N.J. Super. 537,

A-4031-17T1

545 (App. Div. 2015). "[I]f a trial court summarily denies an adjournment to retain private counsel without considering the relevant factors, or abuses its discretion in the way it analyzes those factors, . . . deprivation of the right to choice of counsel [can] be found." Kates, 216 N.J. at 397.

Against that legal backdrop, we conclude the second motion judge abused her discretion in her analysis of certain factors and failed to consider other relevant factors. Without citing Furguson, or any governing law, the judge summarily concluded the case was "old"; defendant "[kept] on changing attorneys"; defendant "begged" the first motion judge to deny his attorney's prior motion to be relieved; and defendant had "competent counsel." At least two of those conclusions find no support in the record.

Initially, we recognize the trial date had been postponed three times within the fifteen-month timeframe following indictment and plea cutoff had been entered nine months before the ultimate trial date. But, each of those adjournments was made at defense counsel's request and granted to accommodate her trial schedule. Unlike defendant, counsel's clients in those other matters were in custody or their cases were older. Absent from the record is any indication that defendant previously sought to adjourn any of the trial dates to retain new counsel. Rather, defense counsel represented defendant

10

continuously from February 2016 to sentencing in April 2018. The judge's determination that the trial was adjourned because defendant "[kept] on changing attorneys" therefore finds no support in the record. Any implication that the requested adjournment on September 12 was made for "dilatory, purposeful, or contrived" reasons is accordingly suspect. Ibid. We discern no basis to attribute the age of the case to any fault of defendant.

Nor does the record support the judge's finding that defendant implored the first motion judge to deny defense counsel's motion to be relieved:

> [FIRST MOTION JUDGE]: Okay. So let me ask you this. Do you want her to continue as your attorney?
>
> []DEFENDANT: Yes and no.
>
> [FIRST MOTION JUDGE]: Okay.
>
> []DEFENDANT: I mean, I don't really have a problem with her.
>
> [TRIAL COUNSEL]: And I don't have a problem with him . . . .
>
> []DEFENDANT: I mean, the financial issue is the problem, and I understand that. But I said there was [sic] . . . certain events that . . . transpired.
>
>           . . . .
>
> [FIRST MOTION JUDGE]: . . . before I proceed, I just need to know do you want her to be your lawyer for this trial or not?

[]DEFENDANT:  Well, I would like to be [sic].

That colloquy does not suggest defendant "begged" the first motion judge to deny defense counsel's application.  Instead, defendant appears to have equivocated, without further explanation or inquiry from his attorney or the judge.

Also, although the second motion judge noted defense counsel's competence, our Supreme Court has recognized "the availability of other competent counsel, while relevant, 'is no substitute by itself for the constitutional right to choose counsel . . . .'"  Kates, 216 N.J. at 396 (quoting State v. Kates, 426 N.J. Super. 32, 46 (App. Div. 2012)).  "To argue otherwise is to confuse the right to counsel of choice – which is the right to a particular lawyer regardless of comparative effectiveness – with the right to effective counsel – which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed."  Kates, 426 N.J. Super. at 46 (internal quotation marks omitted).

Turning to the remaining Furguson factors, we note at the conclusion of the hearing the second motion judge correctly observed defendant's potential new counsel had not contacted the court to seek an adjournment of trial or indicated "he ha[d] been newly assigned [sic] to this case[,]" but the judge

otherwise failed to determine "the length of the requested delay." Furguson, 198 N.J. Super. at 402. We see no reason, under the circumstances presented here, why the judge could not have ordered potential new counsel to contact the court forthwith to address that factor and any other concerns she had about adjourning the trial.

More importantly, the judge failed to inquire about defense counsel's declaration that her communication with defendant had "br[oken] down." Recognizing "defense counsel's reservations" in that regard, the prosecutor did not oppose the application for an adjournment – nor assert any attendant inconvenience – even though a new trial date had not been proposed. Notably, the second motion judge did not preside over the trial and did not indicate whether the trial judge's schedule would have been adversely impacted by an adjournment. Absent from the record, therefore, is any indication that the "litigants, witnesses, counsel, and the court" would have been inconvenienced by an adjournment. Ibid.

Finally, we reject the State's fleeting argument that defendant suffered no prejudice by defense counsel's continued representation. As we have recognized, "[w]hen the right to counsel is wrongfully denied, it is not necessary to inquire as to effectiveness of counsel or whether defendant suffered actual

A-4031-17T1

prejudice in the ensuing proceedings." Martinez, 440 N.J. Super. at 546; see also Kates, 426 N.J. Super. at 44 ("A non-indigent defendant who is erroneously or arbitrarily denied the constitutional right to counsel of his or her choice need not show prejudice to obtain reversal of a conviction.").

Because she failed to properly consider and balance the Furguson factors, we conclude the second motion judge abused her discretion by summarily denying defendant's request for an adjournment to substitute private counsel.

II.

We turn to the issues raised during jury deliberations concerning a juror's possible introduction of extraneous information.

A.

On the second day of jury deliberations, Juror Number Seven sent a note to the trial judge requesting to speak with him "in private." The judge summoned the juror into the courtroom in the presence of counsel to discuss her request. After addressing an unrelated scheduling issue, Juror Number Seven asked the judge: "Now, if there is an individual in the jury room that's more biased because of a certain background, is that something that we're supposed to bring up as a question, or how does that work?"

The judge responded that he could not "restrict" discussions between the jurors, but he should be informed of a situation that was "potential[ly] harmful to others or [if] it [wa]s becoming problematic or somebody ha[d] some concerns . . . ." Juror Number Seven then stated: "It's just a very strong situation that's a little scary . . . ." The judge told the juror, "if you think it's something, [you] [sh]ould discuss it with your foreperson. If you think it's something . . . that I need to address, then it should be presented out to me." After discussing the exchange with defense counsel and the prosecutor outside the presence of the juror, the judge instructed Juror Number Seven not to discuss their exchange with the other jurors, but to send him a more detailed note if she had further issues.

Toward the end of deliberations on the following day, Juror Number Seven sent the following note to the trial judge:

> Judge, [Juror Number Nine] cannot be a part of the jury team. She has family that are cops, her husband was in jail, she talked about her son being a cop, [and] her husband used to get things when he was in jail. Please consider her removal.

In the presence of counsel, the judge again questioned Juror Number Seven, noting the jury had indicated it had already reached a unanimous verdict

on three of the eleven counts. When asked whether "anything beyond what [she] wrote in the [note]" concerned her, Juror Number Seven replied:

> It's not only me. . . . [I]t's a group of us and, in the conversations, there's bringing up Facebook or, you know, son's a cop and this is going on, that's going on. [Juror Number Nine] talks about her husband being in jail, getting things that he wasn't supposed to while he was in jail, . . . it's not a[n] . . . unbiased opinion that's constantly being thrown out there and it's making a lot of people uncomfortable. . . . It's getting crazy in there, to be honest.

The judge instructed Juror Number Seven to return to the jury room while he discussed with counsel her concerns and another note the jury had sent to him regarding the taking of a partial verdict. Although much of the record is indiscernible, defense counsel expressed concern that Juror Number Nine had brought her "outside experiences" into the jury room. The judge indicated Juror Number Nine "said she had family in law enforcement" during jury selection. Because of the lateness of the hour, the judge excused the jury for the weekend.

When the jury reconvened the following week, before responding to Juror Number Seven's note, the judge heard argument from counsel. The prosecutor asked whether the court explicitly had questioned Juror Number Nine about her family history during jury selection, adding, "[i]f she wasn't [asked about it], then I think it's an issue that the jury can't proceed." The judge replied, "Well,

I think she indicated her husband was <u>convicted</u> of . . . bookmaking in the early '80s."  (Emphasis added).[6]

Defense counsel requested the judge voir dire Juror Number Nine to learn what she had disclosed to the jury about her husband's incarceration and how that might have influenced her.  Counsel contended proceeding without conducting any further inquiry would constitute reversible error.  The judge disagreed and elaborated:

> The difficulty this note presents is it appears what is going on in the jury room is jury deliberations.  Jurors are told, often by attorneys during summations; use your life experience and common sense.  They're told in my instructions to use your common sense.
>
> There is nothing in this note that triggers a concern in this [c]ourt's mind about a team player.  We know that this jury has been able to . . . although not delivered, . . . reach[] verdicts on [seven] of [eleven] counts. . . .
>
> [T]he fact that [Juror Number Nine] may be talking about her son in law enforcement . . . they're

---

[6] During jury selection, Juror Number Nine revealed at sidebar that her father was an attorney, her brother-in-law was a municipal chief of police, and her son was a police officer for another municipality.  The juror also disclosed that prior to her marriage, her husband had been <u>arrested</u> for bookmaking in the 1980s (emphasis added).  She indicated that neither her family's law enforcement employment nor her husband's "difficulties bookmaking [sic]" would impact her ability to be a fair and impartial juror.  Juror Number Nine did not, however, disclose that her husband had served time in jail in connection with his "arrest[]."

going to have discussions as part of the deliberations. I don't see any way to make inquiry [about] what impact it may have had on her. It doesn't make a difference. There's nothing wrong if her decision[-]making is based on who she is and what makes her tick.

Her decision[-]making may be based on the fact that she has a son in law enforcement. It doesn't mean she's prejudiced or biased. That's who she is. That's who you all knew . . . she was. She had a husband that was convicted of bookmaking. She indicated it had no impact on her life. She can be fair and impartial.

There's nothing to indicate that she is in any way using outside sources, [or] that she's speaking to anybody about this case outside. There's not an indication there is a single instruction of this [c]ourt that has been violated by [J]uror [N]umber [Nine]. And I have to, in all candor, question somewhat the sincerity of [J]uror [N]umber [Seven] writing a note that someone's not a team player.

. . . .

The note doesn't say [J]uror [N]umber [Nine] spoke to her husband last night and he told her that he used to get things in jail. It doesn't say that. So there's nothing to make inquiry of this juror. She may be speaking about their life experiences, as I imagine all of them do, as we tell them to use [their] common sense. What's your common sense based on? Life experience. I don't find that there's . . . any further inquiry needed to be raised.

Defense counsel disagreed, arguing: "The issue that I have is that a juror wrote on a note that her husband received things in jail. That goes directly to

this case."[7] The judge denied counsel's request that the court conduct a further inquiry, and her ensuing application for a mistrial. The jury resumed deliberations, and shortly thereafter rendered a partial verdict, as stated above.

B.

We begin our review with well-settled principles. The Sixth Amendment to the United States Constitution and Article I, paragraph 10 of the New Jersey Constitution guarantee criminal defendants the right to trial by an impartial jury. See State v. R.D., 169 N.J. 551, 557 (2001). A criminal defendant "is entitled to a jury that is free of outside influences and will decide the case according to the evidence and arguments presented in court in the course of the criminal trial itself." State v. Williams, 93 N.J. 39, 60 (1983). "The securing and preservation of an impartial jury goes to the very essence of a fair trial." Ibid.

Ordinarily, we defer to the trial court's decisions concerning "matters pertaining to the jury." R.D., 169 N.J. at 560. Accordingly, "[t]he decision to grant a mistrial rests within the sound discretion of the trial judge." State v.

---

[7] Defendant did not testify nor present the testimony of any witnesses at trial. Notwithstanding the testimony of three inmates, who claimed their mothers paid defendant to smuggle tobacco into the jail, and a video apparently depicting defendant bringing tobacco into the jail, defense counsel argued the State failed to prove defendant was guilty as charged in the indictment. Among other things, counsel contended the State failed to prove the substance depicted in the video was tobacco.

A-4031-17T1

Gleaton, 446 N.J. Super. 478, 524 (App. Div. 2016).  While we recognize "granting a mistrial in a criminal case 'is an extraordinary remedy[,]' the trial judge is bound to grant this relief when it is necessary to 'prevent an obvious failure of justice.'"  Id. at 514 (quoting State v. Yough, 208 N.J. 385, 397 (2011)) (citation omitted).

Whether the court failed to properly exercise its discretion in handling juror issues depends upon whether the court's actions impaired defendant's right to a fair trial.  "[A] defendant's right to be tried before an impartial jury is one of the most basic guarantees of a fair trial."  State v. Brown, 442 N.J. Super. 154, 179 (App. Div. 2015) (citation omitted).

We have observed the trial judge has a "duty to investigate any claims that may affect the integrity of the jury's deliberations."  Gleaton, 446 N.J. Super. at 518.  For example, in Gleaton, we rejected the trial judge's reliance on one juror's description of an issue concerning another juror.  We observed "the judge should have interviewed each juror individually."  Id. at 519.  "This approach . . . permit[s] the judge to gauge the extent of the problem in a private setting conducive to promote candor and honesty and less vulnerable to any intimidation or unintended pressures associated with group-thinking." Id. at 518-19; see also Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R.

20

1:16-1 (2020) (clarifying that although the Rule applies to post-verdict juror voir dire, the same method to determine juror taint also applies during trial and jury deliberations).

Of course, the trial judge must avoid eliciting information from the jurors about their deliberative process and their inclinations on the defendant's guilt. See State v. Jenkins, 182 N.J. 112, 134 (2004). We acknowledge that this is often easier said than done, particularly here, where the jury was obviously divided, the court had already given an Allen[8] charge, and had instructed the jury that it could render a partial verdict. We understand the judge's reluctance to interject himself into the jury's deliberations under these circumstances. We conclude, however, that Juror Number Seven's allegation that Juror Number Nine related matters extraneous to the evidence adduced at trial, i.e., her husband's apparent disclosure about how he obtained "things" when he was incarcerated – the very issue the jury was charged with considering here – required, at the very least, closer questioning of Juror Number Seven and likely voir dire of Juror Number Nine.

In reaching our decision, we note Juror Number Nine's reference to her husband's experience while incarcerated related directly to the charges before

---

[8] Allen v. United States, 164 U.S. 492 (1986).

21

the jury and was not the sort of common life experience or knowledge jurors might have acquired from the media. Compare State v. Athorn, 46 N.J. 247, 252 (1966) (recognizing statements by jurors that "cops take bribes" constituted permissible deliberation based on life experience learned from the media) with State v. Grant, 254 N.J. Super. 571, 588 (App. Div. 1992) (observing a juror's statements about conversations with her correction officer husband regarding his opinion on the defendant's guilt based on his law enforcement experience constituted impermissible extraneous information).

In sum, because we conclude the second motion judge summarily adjourned the trial without properly assessing the relevant Furguson factors, and the trial judge should have questioned Juror Number Seven as to precisely what Juror Number Nine related to the jury about her husband's receipt of "things that he wasn't supposed to" get in jail before declining to voir dire Juror Number Nine, we are constrained to reverse and remand for a new trial. See State v. Gibson, 219 N.J. 227, 241 (2014) ("A single error or a combination of errors in a pre-trial proceeding or a trial or both may require an appellate court to reverse the conviction and to remand for a new trial.").

Reversed and remanded for a new trial. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4031-17T1