STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
DENNIS METCALF, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 8, 1979—Decided May 30, 1979.

376

Before Judges LYNCH, CRANE and HORN.

*Mr. Emerson L. Darnell,* designated attorney, argued the cause for appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. Wayne J. Martorelli,* Deputy Attorney General, argued the cause for respondent (*Mr. John J. Degnan,* Attorney General, attorney; *Mr. Wayne J. Martorelli, Mr. Blair R. Zwillman,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

HORN, J. A. D. Defendant Dennis Metcalf appeals from his conviction following a bench trial of unlawfully distributing a controlled dangerous substance, phendimetrazine, in violation of *N. J. S. A.* 24:21–19(a)(1), and of unlawfully possessing said substance, in violation of *N. J. S. A.* 24:21–20(a)(1).

Defendant contends that his convictions were invalid for two reasons: (1) the possession and distribution of phendimetrazine was not proscribed under our law, *i. e.,* not classified as a controlled dangerous substance on May 14, 1975, the date when he was found to have committed said crimes, and (2) the trial judge allegedly applied an erroneous legal test in finding defendant guilty as an aider and abettor.

We take up the first contention. The New Jersey Controlled Dangerous Substances Act, *N. J. S. A.* 24:21–1 *et seq.*, became effective on January 17, 1971. *L.* 1970, *c.* 226; *State v. Ford,* 119 *N. J. Super.* 260, 262 (App. Div. 1972). The New Jersey act is modeled, and is largely dependent, on the corresponding federal regulatory provisions. 21 *U. S. C. A.* § 811 *et seq. N. J. S. A.* 24:21–3(c) and 3(d) provides, as pertinent:

> c. If any substance is designated, rescheduled or deleted as a controlled dangerous substance under Federal law and notice thereof is given to the commissioner, the commissioner shall similarly control the substance under this act after the expiration of 30 days from publication in the Federal Register of a final order designating a substance as a controlled dangerous substance or rescheduling or deleting a substance, unless within that 30-day period, the commissioner objects to inclusion, rescheduling, or deletion. In that case, the commissioner shall cause to be published in the New Jersey Register and made public the reasons for his objection and shall afford all interested parties an opportunity to be heard. At the conclusion of any such hearing, the commissioner shall publish and make public his decision, which shall be final unless the substance is specifically otherwise dealt with by an act of the Legislature. Upon publication of objection to inclusion or rescheduling under this act by the commissioner, control of such substance under this section shall automatically be stayed until such time as the commissioner makes public his final decision.
>
> \* \* \* \* \* \* \* \*
>
> d. The State Department of Health shall update and republish the schedules in sections 5 through 8 on a semiannual basis for 2 years from the effective date of this act and thereafter on an annual basis.

Defendant maintains that publication in the context of the New Jersey Controlled Dangerous Substances Act means publication in the New Jersey Register. He asserts that there was no publication in the *Register* sufficient to alert the public that phendimetrazine had become a controlled dangerous substance.

Phendimetrazine was not on the original schedules of controlled dangerous substances. However, on June 15, 1973 phendimetrazine was classified as a controlled danger-

ous substance within Schedule III of the federal act. 38 *Fed. Reg.*, Vol. 115.

We disagree with defendant's contention that publication under *N. J. S. A.* 24:21–3(d) requires that the publication be in the New Jersey Register. That medium is only mentioned in the statute as a forum for the commissioner's objection to a federal decision regarding a drug. Nevertheless, *N. J. S. A.* 24:21–3(d) does impose a requirement of publication upon the Commissioner of Health. The Commissioner, after two years from the effective date of the act, must annually update and republish the controlled dangerous drug schedules.

We are satisfied under this interpretation of the quoted statute that there was adequate publication as required by § 3(d) of said statute. The *New Jersey Register* of February 7, 1974 contained a notice stating that the Commissioner had, on January 2, 1974, adopted new controlled dangerous substance schedules. That notice stated that the full text of such schedules could be obtained by writing the Division of Narcotic and Drug Abuse Control at a specified address. The notice also said that the schedules would be included in *N. J. A. C.* 8:65–10.1. *N. J. A. C.* 8:65–10.1, dated June 30, 1974, lists phendimetrazine as a Schedule III controlled dangerous substance.

*N. J. S. A.* 52:14B–7(c) provides that the Director of Administrative Procedure:

* * * may omit from the New Jersey Register or compilation any rule the publication of which would be unduly cumbersome, expensive, or otherwise inexpedient, if the rule in printed or processed form is made available by the adopting agency on application thereto, and if the register or code contains a notice stating the general subject matter of the omitted rule and stating the manner in which a copy thereof may be obtained. * * *

In our view there was constructive publication of phendimetrazine as a controlled dangerous substance in the *New Jersey Register* (in a fashion specifically authorized by

statute) and actual publication of phendimetrazine in the Administrative Code as a controlled dangerous substance well before the date on which defendant's illegal activities took place. Anyone interested in ascertaining whether phendimetrazine was classified as a controlled dangerous substance would have been alerted by the notice so as to learn that it was. Defendant freely admits through his counsel that he did not rely on any publication to determine if the drug was classified as a controlled dangerous substance. Accordingly, we find defendant's first contention to be without merit.

We also find that defendant's second contention is unpersuasive. Defendant and Rose Marie Klemm directed the undercover agent to go to a place where the seller of the drug would appear and sell same to him. Defendant argues that he did not share the intent to bring about a drug sale. He asserts his activity was rather a "friendly gesture of accommodation." He cites *Commonwealth v. Flowers*, 479 *Pa.* 153, 387 *A.* 2d 1268 (Sup. Ct. 1978), as case-law support for his proposition that he did not have the requisite intent to be convicted of aiding and abetting. However, in the *Flowers* case the court noted: "The prosecution does not contend that [defendant] offered to obtain any [drugs], or that he made any suggestions as to obtain any [drugs], or that he made any suggestions as to where or from whom it might be procured." 387 *A.* 2d at 1271.

 *N. J. S. A.* 2A:85–14 provides in part that: "Any person who aids, abets, counsels, commands, induces, or procures another to commit a crime is punishable as a principal."

> As used in the statute the word "aid" means to assist, support or supplement the efforts of another, and the word "abet" means to encourage, counsel, incite or instigate the commission of a crime. The aider and abettor must share the same intent as the one who actually committed the offense. [*State v. Newell*, 152 *N. J. Super.* 460, 469 (App. Div. 1977)]

See *State v. Madden*, 61 *N. J.* 377, 396–397 (1972). In finding defendant guilty the trial judge said:

* * * Clearly the defendant made two unsuccessful efforts to obtain a source of drugs for the undercover agent before he was successful in located [sic] the girl who ultimately made the sale to the agent. Just as clearly the defendant did not handle either the money or the merchandise. * * * [I]t seems to me unmistakable that, in fact, the defendant was the agent for both the seller and buyer and cannot escape the consequences of his act by arguing that he dealt with the buyer first.

 Although defendant in the instant case did not receive any money from the drug transaction, a pecuniary interest is not a prerequisite for one to be considered an aider or abettor. The proofs at trial showed that defendant was involved in two successive attempts to obtain drugs for the undercover agent. The judge's determination that defendant was an agent for both the buyer and seller of the pills is amply supported by the evidence.

Affirmed.