**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0516-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANGELO CUCULINO a/k/a
ANGELO CUCLINO,

    Defendant-Appellant.

_____

        Argued September 16, 2019 – Decided November 22, 2019

        Before Judges Sabatino, Sumners and Geiger.

        On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Indictment No. 15-01-0028.

        Jennifer L. Gottschalk argued the cause for appellant.

        Gretchen Anderson Pickering, Assistant Prosecutor, argued the cause for respondent (Jeffrey H. Sutherland, Cape May County Prosecutor, attorney; Gretchen Anderson Pickering, of counsel and on the briefs).

        Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Angelo Cuculino entered an open unconditional guilty plea to all five counts of an indictment on the eighth day of a jury trial after the State had rested. Among the charges defendant pleaded guilty to were two counts of third-degree distribution of a controlled dangerous substance (CDS) called alpha-pyrrolidinopentiophenone (alpha-PVP),[1] in violation of N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(13). He appeals from his conviction and sentence, contending the trial court erred by: (1) denying his motion to dismiss counts one and two of the indictment because alpha-PVP was not a controlled dangerous substance (CDS) under New Jersey law on the dates he distributed it to an undercover detective; (2) denying his motion to dismiss counts one through four of the indictment because the grand jury presentation was irrevocably flawed; (3) denying his motion to suppress physical evidence; (4) denying trial counsel of his choice; (5) denying his motion to withdraw his guilty plea; and (6) imposing an excessive sentence that included three non-mandatory

---

[1] "Alpha–PVP is a designer drug that produces a powerful stimulant effect in its users." United States v. Moreno, 870 F.3d 643, 644 (7th Cir. 2017). Alpha-PVP is commonly known as "flakka" or "flocka." Cannel, N.J. Criminal Code Annotated, cmts. on N.J.S.A. 2C:35-5.3a & N.J.S.A. 2C:35-10.3a.

consecutive prison terms.    We affirm the convictions and remand for resentencing.

I.

We discern the following facts from the record.  A narcotics investigation was initiated by a Cape May County Prosecutor's Office's Task Force based on information it received about defendant from a confidential informant (CI).  The investigation led to two undercover buys from defendant and the seizure of other contraband.

More specifically, on September 26, 2014, Detective Ashlee Lucariello, acting as an undercover officer, traveled to Upper Township to meet with defendant for the purpose of purchasing a CDS known as "Mollie."[2]  Lucariello arrived at a location on South Shore Road in Marmora,[3] entered defendant's Jeep,[4] and tendered $80 in prerecorded currency in exchange for a clear Ziploc bag of an off-white, rock-like substance that later tested positive for alpha-PVP,

---

[2]    Also known as MDMA, "mollie" is the street name for methylenedioxymethamphetamine.  It is the primary component of the CDS commonly known as Ecstasy.

[3]  Marmora is part of Upper Township.

[4]  Motor vehicle records identified defendant as the owner of the Jeep.

a bath salt. After completing the sale, defendant was observed as he traveled directly to and entered his residence in Marmora.[5] On September 30, 2014, Lucariello identified defendant as the individual who sold her the drugs from a double-blind photo array.

On October 9, 2014, Lucariello performed another undercover buy from defendant. Once again, Lucariello traveled to a location on South Shore Road in Marmora, entered defendant's Jeep, and exchanged $80 for one clear Ziploc bag of an off-white, rock-like substance that later tested positive for alpha-PVP.

Based on these events, the Prosecutor's Office applied for a search warrant for defendant's person, vehicle, and residence based on the fourteen-page affidavit of Task Force Officer Christopher Vivarelli. The affidavit set forth Vivarelli's law enforcement experience and specialized training. The search warrant was sought based on evidence defendant engaged in the distribution, possession, and use of CDS, including alpha-PVP, and possession of paraphernalia. The affidavit detailed information learned from the CI during the month of September 2014 regarding a CDS distribution scheme in Cape May County. The affidavit also set forth the previous reliability of the CI.

---

[5] The location of the residence matched defendant's motor vehicle records.

The CI provided information that defendant was actively distributing "Mollie" and marijuana in Cape May County, including Ocean City and Upper Township. The CI identified defendant from a photograph. The CI also provided defendant's cellular telephone number.

The affidavit further related Lucariello's two undercover buys of CDS from defendant in considerable detail. It also set forth defendant's criminal history, which included a prior CDS conviction.

The search warrant was granted by a Superior Court judge and executed on October 16, 2014. Defendant was stopped while driving and arrested. A search incident to arrest revealed $2,896 in his pant's pockets. The search warrant was then executed on defendant's residence. A search of the northeast bedroom revealed: a 1000-gram digital scale; a clear Ziploc bag containing an off-white, rock-like substance that tested positive for Methylone, a bath-salt-type Schedule I CDS; a .22 caliber handgun with one empty magazine; 100 rounds of .22 caliber bullets; and $16,073. The search also revealed: a clear plastic bag containing brownish-green vegetation in the second floor hallway closet; numerous Ziploc baggies with "Heavy D" girl stamps in the first floor living room; and a 12-gauge shotgun and a rifle behind the first-floor furnace. A search of defendant's Jeep revealed five cell phones and $256.

A Cape May County Grand Jury returned a five-count indictment against defendant, charging him with: two counts of third-degree distribution of CDS or its analogue (alpha-PVP), N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(13) (counts one and two); third-degree possession with intent to distribute CDS (Methylone), N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(13) (count three); second-degree unlawful possession of firearms while committing a CDS crime, N.J.S.A. 2C:39-4.1 (count four); and second-degree certain persons not to possess firearms, N.J.S.A. 2C:39-7 (count five). Counts one and two were based on sales of alpha-PVP to an undercover officer on September 26 and October 9, 2014, respectively. Counts three, four, and five were based on evidence seized during the search of defendant's residence. The indictment was based on the testimony of Detective Sergeant Daniel Holt of the Cape May County Prosecutor's Office. The grand jury presentation included testimony that the bath salts could not be used for bathing, and none of the seized firearms were registered.

In early 2015, defendant retained private counsel. Defendant moved to suppress the evidence seized during the execution of the search warrant and to dismiss the indictment. Defendant argued the search warrant was not based on sufficient probable cause. He also argued the indictment should be dismissed

because alpha-PVP was not illegal in New Jersey during the time period in question. The trial court denied both motions.

By mid-August 2015, defendant retained new private counsel. Defendant moved for reconsideration of the denial of his motions to dismiss the indictment and to suppress the physical evidence seized during the search of his car and house. He also moved: (1) for change of venue; (2) to reveal the identity of a confidential informant and/or in camera review of confidential information; and (3) to suppress the chain of custody. The trial court denied the motions.

Trial was scheduled for mid-May 2016. The State moved in limine to declare that alpha-PVP was a scheduled CDS in New Jersey at the time of the two undercover buys. The trial court conducted a N.J.R.E. 104 hearing during which Matthew Wetzel, the Assistant Deputy Director of the Division of Consumer Affairs of the Department of Law and Public Safety (the Division), was the sole witness.

Wetzel testified regarding the process by which alpha-PVP became a CDS in New Jersey. He explained that on January 28, 2014, the Federal Drug Enforcement Agency (DEA) published a notice of intent in the Federal Register to place alpha-PVP on a CDS schedule. On March 7, 2014, the DEA issued and

published an order in the Federal Register placing alpha-PVP as a Schedule I CDS. The order became effective as of the date it was published.

Wetzel testified that pursuant to N.J.A.C. 13:45H1,7 and -8.2, alpha-PVP became a Schedule I CDS in New Jersey thirty days later on April 6, 2014, because the Director of the Division did not object to it being scheduled as a CDS. Wetzel confirmed that alpha-PVP was a Schedule I CDS in September and October 2014 and remained so.

While the Division maintains a CDS master list that is updated over time after the administrative procedure is finalized, it refers inquiring parties to the DEA's "website which clearly lists all Schedule I through Schedule V controlled substances." Wetzel noted that a substance becomes scheduled in New Jersey – even if not identified on the master list – when identified as CDS on a federal CDS schedule.

The trial court found Wetzel was "familiar with the legislative process, the administrative process, as well as scheduling of items pursuant to the Administrative Code and [N.J.S.A.] 24:21-3." It deemed Wetzel's testimony to be candid, credible, and internally consistent. The court noted alpha-PVP was still listed as a scheduled CDS on the federal website. It found that any individual who wanted to check if a substance was a CDS could do so without

difficulty. The court determined alpha-PVP became a CDS in New Jersey as of April 6, 2014, and "barr[ed] any reference by either side raising the issue that alpha-PVP is not a Schedule I controlled dangerous substance." The trial court denied defendant's request for a stay pending appeal.

Defendant then sought emergent review, leave to appeal, and a stay of the trial court's rulings from this court in applications prepared by trial counsel and appellate counsel. We denied the applications.

The jury trial was delayed because defendant was admitted to the hospital on May 19, 2016. The trial began four days later. Defendant sought to further adjourn the trial due to alleged medical issues. He presented a note dated May 19, 2016, and letter dated May 24, 2016, from Wayne R. Schneider, M.D. The letter stated that on May 19, 2016, defendant was placed on medical leave for one month following his hospital admission and that he "requires absolute non-stressful situations and activity i.e. home rest due to the possible complications of not having timely and necessary cardiac testing. Stress of any kind could induce an acute coronary syndrome. At this point he is unable to focus due to his condition." Defendant claimed he was not physically or mentally competent to stand trial based on his medical condition. The trial court refused to delay

the trial unless Dr. Schneider testified in court that a further adjournment of the trial was medically necessary. That did not occur.

Defendant also sought to adjourn the trial to retain new trial counsel. He claimed trial counsel informed him that he had not properly prepared a defense, had not hired any experts, had not subpoenaed any witnesses, and had not examined the evidence until two days before trial. The trial court declined adjourning the trial.

The trial commenced on May 23, 2016. After the State rested, defendant moved for a judgment of acquittal on counts three and four pursuant to State v. Reyes, 50 N.J. 454 (1967). Before the court rendered a decision, defendant indicated his intent to enter an unconditional open guilty plea to all five counts after the State secured permission to plead the case off the trial list. Because it was an open plea, there was no recommended sentence.

The trial court conducted a thorough plea hearing. The court noted it had "given no indication as to what the maximum sentence would be." Counsel confirmed it was an open unconditional plea to all five counts. The court and the prosecutor stated they had made no sentencing promises. The prosecutor confirmed that the State was not making any sentencing recommendations.

During his sworn testimony, defendant confirmed he was fifty years old and had completed high school. He stated he had taken aspirin and a nitroglycerin pill that day. He did not think the medication affected his ability to think clearly. He stated he was under medical treatment but it did not impair his judgment. He confirmed that he understood what he was doing by pleading guilty.

Defendant confirmed he reviewed each question on the plea forms with his attorney, understood the questions, and answered each question truthfully. He stated he was entering an open plea "settling this matter now," after the State had rested.

Defendant confirmed that he was satisfied with his attorney and the advice he received. He acknowledged reviewing all of the discovery and each of the counts of the indictment. When asked if he had any defense to the charges he was pleading to he answered in the negative. He confirmed that he was pleading guilty because he was guilty of the offenses.

Defendant also confirmed he was pleading guilty voluntarily and that no one forced, threatened, pressured, or coerced him to enter the open plea. He further confirmed that no promises had been made to him by the State or the court. Defendant acknowledged the rights he was giving up by pleading guilty

A-0516-16T4

and still wished to do so. He acknowledged this was not the first time he had pleaded guilty to a crime.

Defendant provided a detailed factual basis for his plea to each count. He admitted to unlawfully selling alpha-PVP to an undercover officer on two dates and possessing Methylone, which the police found in his bedroom, with intent to distribute it. He also admitted knowing that alpha-PVP and Methylone were CDSs at the time the respective offenses were committed and that it was unlawful to distribute or possess those substances.

As to the weapons offenses, defendant admitted that a pistol, 12-gauge shotgun, and bolt action rifle were seized from his residence. He admitted unlawfully possessing the three firearms while committing the crime of possession of CDS with intent to distribute it. When asked if the firearms were his, defendant twice answered, "Yes." When asked if he knew the firearms were in his home, defendant twice answered, "Yes." Defendant specifically admitted to being in possession of the three firearms. He further admitted being designated a person not to possess firearms due to his 1995 conviction for endangering the welfare of a child.

Defendant confirmed he had no questions about the statutory maximum sentence for each count. He acknowledged that each third-degree offense

carried a maximum sentence of five years and the second-degree offenses carried a ten-year maximum term, yielding an aggregate thirty-five-year term if the terms ran consecutively.

The court made the following findings:

> I find you've had the advice of competent counsel with whom you are satisfied. You've entered this plea to these charges freely and voluntarily. You knowingly, intelligently, and freely waived your rights to a trial of the evidence, the continuation of the trial of the evidence, to confront any further witnesses or call your witnesses and to remain silent or testify as you so choose with your attorney's advice. I find that you are neither intoxicated, nor infirmed, and I make that based on your testimony that you've given me, as well as my observations. . . . I find you have not been threatened or coerced to enter into the open plea unconditionally. No promise has been made to you outside the record. I find that you understand the range of the sentence that may [be] imposed and that's been displayed on the – the top of the plea forms.

The court also found defendant provided an adequate factual basis for the pleas. The court accepted the open plea and scheduled sentencing for August 19, 2016. Defendant then withdrew his pending Reyes motion.

On July 22, 2016, defendant's fourth counsel replaced trial counsel and moved to amend the electronic monitoring pending sentencing. The trial court denied the motion.

13

Prior to sentencing, defendant moved to withdraw his guilty plea, arguing he always maintained his innocence, his trial attorney was unprepared, and he did not plead voluntarily. Defendant claimed two other men were responsible for the first CDS sale and the second CDS sale did not occur as the State alleged. Counsel noted there was no independent objective evidence of either sale, such as videotapes, audio recordings, or photographs.

As to the weapons charges, defendant claimed he was unaware that the firearms were in his house. Defendant asserted he was prepared to have witnesses testify that the firearms were brought to his house by somebody else. He maintained that he provided the names, addresses, and phone numbers of those witnesses to trial counsel.

Defendant contended his trial counsel was completely unprepared, had not reviewed all of the discovery, did not understand the chemistry of the lab tests, had not subpoenaed any witnesses, and had not complied with Rule 3:13-3 by providing a summary of each witnesses expected testimony. Defendant further contended trial counsel told him he had no choice but to plead guilty because he has no witnesses, and if he did have witnesses, they would not be believable, and he could not testify because nobody is going to believe him. Defendant claimed he wanted to testify. Defendant also pointed out that his attempt to

14

obtain a new attorney was denied by the court because it was too late to do so. Finally, defendant contended withdrawal of the pleas would not be unfair to the State or give defendant an unfair advantage.

Conversely, the State argued that trial counsel was prepared and had met with prosecutors on numerous occasions. The prosecutor noted this was not a post-conviction relief hearing. The prosecutor pointed to defendant's pretrial motion practice and interlocutory appeals. Trial counsel cross-examined all of the State's witnesses. Moreover, the issue of whether alpha-PVP was a scheduled CDS was determined pretrial. The prosecutor also informed the court that defendant consulted with both trial counsel and another criminal defense attorney who had not yet entered an appearance, before entering the open plea.

The State contended defendant entered his open plea voluntarily and knowingly. It argued it would be prejudiced if defendant were permitted to withdraw his plea after it had rested. Finally, it asserted defendant did not express a colorable claim of innocence.

The trial court issued an oral decision denying the motion. It analyzed the four factors adopted by the Court in State v. Slater, 198 N.J. 145, 157-58 (2009).

The court recounted defendant's unequivocal testimony during the "painstakingly detailed" plea hearing, including being satisfied with his attorney

and the advice he had received. Based on defendant's testimony during the plea hearing, the court rendered its decision without hearing additional testimony, finding it unnecessary.

The court deemed defendant "very much in control of his defense." The court concluded "certain things happened at trial and that [the] plea would not have happened unless [defendant] wanted it to happen." It noted there were two sales to undercover officers, a valid search warrant, and trial counsel had submitted a proposed witness list.

The court stated the maximum aggregate sentencing exposure if the terms ran consecutively was addressed during the plea hearing and understood by defendant. The court further noted that mandatory consecutive sentence requirement for unlawful possession of a firearm while committing a CDS crime was addressed in the pretrial memorandum that was completed with the assistance of counsel.

The court noted the determination that alpha-PVP was a CDS was made after conducting a hearing before the trial commenced. The court rejected defendant's claim that a hearsay document from the Governor's Office presented a colorable claim of innocence. The court discussed the strength of the State's

16

case as to the distribution of alpha-PVP to undercover Detective Lucariello, whose "unequivocal" testimony was "clear, concise, [and] direct."

The court noted defendant clearly indicated he was satisfied with trial counsel during the plea colloquy. The court concluded that an open plea should be given even more weight than a negotiated plea.

As to prejudice to the State, the court noted defendant had the opportunity to listen to all of the State's witnesses, which allowed him to assess the strength of the State's case. The court concluded withdrawal of the guilty plea would prejudice the State, in part due to the additional passage of time that would result in further fading of memories.

The court then proceeded to sentencing. During his allocution, defendant again argued to withdraw his guilty plea. The trial court found aggravating factors three, six, and nine and no mitigating factors.[6] The court sentenced defendant to four-year terms on counts one, two, and three; a six-year term on count four, and a six-year term with a mandatory five-year period of parole ineligibility on count five. When considering whether the terms should run concurrently or consecutively, the court stated:

> Based on the facts and consideration of State v. Yarbough, 100 N.J. 627 (1985), the [c]ourt finds . . .

---

[6] N.J.S.A. 2C:44-1(a)(3), (6), (9).

there can be no free crimes in the system for which the punishment shall fit the crime. The five crimes are separate and distinct. The crimes and objectives were predominantly independent of each other, committed on . . . separate occasions, and were not indicative of a single period of aberrant behavior. The [c]ourt does not factor and/or double count aggravating factors. The [c]ourt finds it is indisputable that the crimes were independent of each other, committed on different days, different times. The [c]ourt does find that a consecutive sentence is appropriate for this defendant.

The court ordered each term to run consecutively, yielding an aggregate twenty-four-year prison term subject to a five-year period of parole ineligibility. Defendant acknowledges that the sentence on count four is mandatorily consecutive pursuant to N.J.S.A. 2C:39-4.1(d), and the five-year period of parole ineligibility on count five is mandatory pursuant to N.J.S.A. 2C:39-7(b)(1). This appeal followed.

The Legislature subsequently amended N.J.S.A. 2C:35-5.3a(a) and N.J.S.A. 2C:35-10.3a(a), effective August 7, 2017, more than two years after the undercover buys that lead to defendant's conviction on counts one and two.[7] The amendments expressly criminalize distribution, possession with intent to distribute, and possession of substances containing alpha-PVP. N.J.S.A. 2C:35-5.3a(a); N.J.S.A. 2C:35-10.3a(a).

---

[7] L. 2017, c. 209. §§ 1-2.

Under the amended version of the statutes, distribution or possession with intent to distribute one ounce or more of alpha-PVP is a second-degree crime, N.J.S.A. 2C:35-5.3a(b), while distribution or possession with intent to distribute less than one ounce of alpha-PVP is a third-degree crime, N.J.S.A. 2C:35-5.3a(c).  Possession of one ounce or more of such substances is a third-degree crime.  N.J.S.A. 2C:35-10.3a(b).  Possession of less than one ounce is a fourth-degree crime.  N.J.S.A. 2C:35-10.3a(c).  Notably, counts one and two charged defendant with third-degree distribution of alpha-PVP, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(13).

Defendant raises the following points on appeal:

POINT ONE

DEFENDANT WAS WRONGFULLY CONVICTED OF UNLAWFUL DISTRIBUTION OF A CONTROLLED DANGEROUS SUBSTANCE, ALPHA-PVP.

A.  The Trial Court Erroneously Ruled That Alpha-PVP Was A Controlled Dangerous Substance Whose Possession Was Prohibited By The New Jersey Criminal Code.

B.  Conviction Of Unlawful Distribution Of Alpha-PVP Was Improper As The Substance's Criminalization Post-Dated Defendant's Plea And Sentencing.

POINT TWO

THE TRIAL COURT SHOULD HAVE DISMISSED COUNTS ONE THROUGH FOUR OF THE INDICTMENT, AS THE GRAND JURY PRESENTATION WAS IRREVOCABLY FLAWED.

A. The Grand Jury Prosecutor Did Not Properly Charge The Grand Jury. (Not Raised Below).

B. The Indictment Was Defective Because It Did Not Adequately Advise Defendant Of The Charges Against Him.

C. The Improper Use Of "And/Or" In Count Four Of The Indictment Also Renders Defendant's Conviction For That Charge Improper. (Not Raised Below).

POINT THREE

THE WARRANT JUDGE IMPROPERLY AUTHORIZED POLICE TO SEARCH DEFENDANT'S HOUSE WHEN IT FAILED TO ESTABLISH PROBABLE CAUSE THAT DEFENDANT HAD CONTROLLED DANGEROUS SUBSTANCES OR PROCEEDS FROM SALES OF THEM THERE.

POINT FOUR

DEFENDANT WAS DENIED TRIAL COUNSEL OF HIS CHOICE IN VIOLATION OF THE SIXTH AMENDMENT OF THE FEDERAL CONSTITUTION.

A-0516-16T4

POINT FIVE

DEFENDANT SHOULD HAVE BEEN PERMITTED TO WITHDRAW[] HIS GUILTY PLEA UNDER RULE 3:9-3(e).

POINT SIX

THE TRIAL COURT IMPROPERLY SENTENCED DEFENDANT TO AN EXCESSIVE TERM BASED UPON CONSECUTIVE TERMS ON COUNTS ONE, TWO AND THREE.

Defendant raised the following points in a pro se supplemental brief:

POINT ONE

THE TRIAL COURT ERRED IN CONVICTING APPELLANT, WHEN LEGISLATURE STATE'S ALPHA-PVP WAS NOT ILLEGAL, NOT CRIMINALIZED, AND NOT A SCHEDULE[]-1 SUBSTANCE IN [NEW JERSEY] WARRANTING DISMISSAL OF THE INDICTMENT.

POINT TWO

THE TRIAL COURT ERRED IN FAILING TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF A COURT ORDERED SEARCH AND SEIZURE OF DEFENDANT'S HOME WHEN NO PROBABLE CAUSE EXISTED.

POINT THREE

THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION FOR A CONTINUANCE, AND PREVENTED HIM FROM DISCHARGING HIS

21

PAID TRIAL COUNSEL AND SUBSTITUTING WITH PAID COUNSEL OF CHOICE.

POINT FOUR

THE TRIAL COURT CONSTITUTIONALLY ERRED IN REFUSING TO ALLOW DEFENDANT TO WITHDRAW HIS OPEN PLEA AND TO TESTIFY AT THAT MOTION.

POINT FIVE

1) THE TRIAL COURT CONSTITUTIONALLY ERRED WHEN ACCEPTING DEFENDANT'S PLEA WHEN NO FACTUAL BASIS HAD BEEN MADE FROM THE LIPS OF DEFENDANT AND 2) THE INDICTMENTS ARE FATALLY DEFECTIVE FOR LACK OF IDENTIFIED SUBSTANCE.

POINT SIX

DEFENDANT IS NOT BARRED FROM RAISING ANY PRE-TRIAL OR CONSTITUTIONAL ISSUES, SINCE DEFENDANT DID NOT WAIVE THOSE RIGHTS. SEE PLEA FORM QUESTION "E."

II.

A.

Defendant mainly argues the Legislature did not criminalize alpha-PVP until it amended N.J.S.A. 2C:35-5.3a(a) and N.J.S.A. 2C:35-10.3a(a), effective August 7, 2017, and thus his conviction for distributing and possessing alpha-PVP with intent to distribute it in 2014 is unconstitutional under ex post facto

principles. The trial court rejected this argument. We review the trial court's legal conclusions de novo. State v. Nash, 212 N.J. 518, 540-41 (2013) (citing State v. Harris, 181 N.J. 391, 415-16 (2004)).

"Both the State and Federal constitutions forbid the legislative branch from passing 'ex post facto' laws." State v. Natale, 184 N.J. 458, 490 (2005) (citing U.S. Const. art. I, § 9, cl. 3; U.S. Const. art. I, § 10, cl. 1; N.J. Const. art. IV, § 7, ¶ 3). "The prohibition against ex post facto laws was intended 'to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed.'" Ibid. (quoting Weaver v. Graham, 450 U.S. 24, 28-29 (1981)). Consequently, "unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law." Ibid. (quoting State v. Young, 77 N.J. 245, 253 (1978) (per curiam)). "Nevertheless, the Ex Post Facto Clause bars retroactive judicial enlargement of a criminal statute only where it is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" Id. at 490-91 (quoting Rogers v. Tennessee, 532 U.S. 451, 457 (2001)).

We reject defendant's argument that alpha-PVP was not a Schedule I CDS at the time of the undercover buys. In reaching that conclusion, we adopt the

reasoning of our recent decision in State v. Nicolas, ___ N.J. Super. ___ (App.

Div. 2019).  As we explained in Nicolas:

>The New Jersey Controlled Dangerous Substances Act (CDSA) both affords and restricts the authority of the Director of Consumer Affairs in the Department of Law and Public Safety (Director) to schedule and control certain hazardous substances.  On one hand, N.J.S.A. 24:21-3(a) permits the Director to control a substance after considering eight factors concerning the substance's potential for abuse, the scientific evidence and knowledge of the substance's effects, and the risk to public health.  However, "[i]f any substance is designated, rescheduled or deleted as a controlled dangerous substance under federal law and notice thereof is given to the [D]irector, the [D]irector shall similarly control the substance . . . after the expiration of [thirty] days from the publication in the Federal Register[.]"  N.J.S.A. 24:21-3(c).  Should the Director "object" to the federal government's "inclusion, rescheduling, or deletion[,] . . . the director shall cause to be published in the New Jersey Register and made public the reasons for his objection and shall afford all interested parties an opportunity to be heard."  Ibid.
>
>In 2014, the Deputy Administrator of the Drug Enforcement Agency (DEA) temporarily placed alpha-PVP in Schedule I.  Schedules of Controlled Substances: Temporary Placement of 10 Synthetic Cathinones into Schedule I, 79 Fed. Reg. 12, 938 (Mar. 7, 2014) (to be codified at 21 C.F.R. pt. 1308).  A substance's temporary designation lasts two years, and the DEA may, as it did in alpha-PVP's case, extend the temporary scheduling for up to one more year.  21 U.S.C. § 811(h)(2); Schedules of Controlled Substances: Extension of Temporary Placement of 10 Synthetic Cathinones in Schedule I of the Controlled

24

Substances Act, 81 Fed. Reg. 11, 429 (Mar. 4, 2016) (to be codified at 21 C.F.R. pt. 1308). The Director declined to object to the DEA's designation of alpha-PVP in Schedule I. Thus, at the time of defendant's 2015 arrest, alpha-PVP was a Schedule I drug under both federal and New Jersey law.

Defendant argues alpha-PVP's designation as such by the federal government does not necessarily mean the substance was in Schedule I under the CDSA. Rather, defendant contends that once the federal government schedules a substance, N.J.S.A. 24:21-3(c) requires the Director to either update the list of controlled substances through publication in the New Jersey Register or file an objection to the federal government's scheduling of the substance. Because the Director never formally recognized alpha-PVP as a controlled substance after the federal government did so, defendant argues his possession of alpha-PVP was not contrary to New Jersey law at the time of his arrest.

We disagree. When the federal government schedules a substance, N.J.S.A. 24:21-3(c) gives the Director thirty days to do one of two things: (1) control the substance consistent with the federal government's scheduling, or (2) file an objection in the New Jersey Register. Absent is a requirement that the Director give notice when he or she intends to control the substance as directed by federal law. Thus, if the Director fails to file an objection to the federal government's scheduling within thirty days, as was the case with alpha-PVP, the Director must control the substance consonant with federal law.

The regulations promulgated by the Director confirm that substances scheduled by the federal government automatically receive the same designation

under the CDSA, unless the Director objects. N.J.A.C. 13:45H-1.7 provides:

> regulations promulgated pursuant to the United States Comprehensive Drug Abuse Prevention and Control Act of 1970, which designate, reschedule or delete a substance as a controlled substance under Federal Law, shall be deemed to be effective under [the CDSA] [thirty] days after their effective date of the Federal regulation, unless the Director, within that [thirty] day period, shall object to inclusion, rescheduling or deletion, which objection shall thereafter be published in the New Jersey Register.

> And N.J.A.C. 13:45H-10.1(b) notes that "[a]ny reference in this chapter to controlled dangerous substance Schedules I, II, III, IV and V shall mean the Federal schedules promulgated at 21 C[.]F[.]R[.] [§§] 1308.11 through 1308.15 . . . unless the Director objects . . . in accordance with . . . N.J.S.A. 24:21-3 and N.J.A.C. 13:45H-1.7." Therefore, alpha-PVP was automatically included in Schedule I because the Director did not object to the federal government's designation.

> [Id. at ___ (slip op. at 4-7) (alterations in original).]

That analysis applies with equal force to the facts in this case. Thus, alpha-PVP was a Schedule I CDS under both federal and New Jersey law at the time defendant distributed it to an undercover officer on September 26 and October 9, 2014.

The holding in Nicolas is not a departure from prior precedent.  In State v. Metcalf, 168 N.J. Super. 375 (App. Div. 1979), we held constructive publication in the New Jersey Register is sufficient to alert the public that a substance listed by the DEA as a Schedule III CDS became a controlled dangerous substance in New Jersey.  Id. at 379-80.  In reaching that conclusion, we addressed whether the regulatory process provided adequate notice to the public that the substance was illegal:

> Anyone interested in ascertaining whether [a substance] was classified as a controlled dangerous substance would have been alerted by the notice so as to learn that it was.  Defendant freely admits through his counsel that he did not rely on any publication to determine if the drug was classified as a controlled dangerous substance.
>
> [Id. at 380.]

Here, defendant testified during the plea hearing that he knew at the time he distributed alpha-PVP to an undercover officer on September 26 and October 9, 2014, it was unlawful to do so because it was a Schedule I CDS.  He does not claim that he relied on any publication or the absence of such publication to determine if alpha-PVP was classified as a CDS.  Indeed, the clandestine nature of the sales to the undercover officer bespeaks knowing it was unlawful to possess or distribute alpha-PVP.

A-0516-16T4

Our decision in <u>Kadonsky v. Lee</u>, 452 N.J. Super. 198 (App. Div. 2017) does not compel a different conclusion.  As we explained in <u>Nicolas</u>:

> the <u>Kadonsky</u> court did not suggest the Director must republish updated CDS schedules each and every time the federal government revises its own schedules. Rather, the Director need only provide notice when he or she "objects to [the federal government's] inclusion, rescheduling, or deletion" of a CDS and to "periodically" "update and republish the schedules" in N.J.S.A. 24:21-5 to -8.1.  N.J.S.A. 24:21-3(c) & (d).  In this case, the Director was not obligated to provide notice that alpha-PVP was added to Schedule I the moment it became a CDS.
>
> [<u>Nicolas</u>, ___ N.J. Super. at ___ (slip op. at 8) (alteration in original).]

Defendant raises an additional argument not raised in <u>Nicolas</u>.  He contends that the subsequent adoption of amendments to N.J.S.A. 2C:35-5.3a(a) and N.J.S.A. 2C:35-10.3a(a), effective August 7, 2017, demonstrate that alpha-PVP was not a CDS in New Jersey when the undercover buys occurred.  We disagree for two reasons.

First, the amendments to N.J.S.A. 2C:35-5.3a(a) and N.J.S.A. 2C:35-10.3a(a) were not retrospective and did not need to be for defendant to be convicted of distribution of alpha-PVP on September 26 and October 9, 2014.  As we have already discussed, alpha-PVP was a Schedule I CDS under both federal and New Jersey law as of April 6, 2014, and remained so thereafter.

Nicolas, ___ N.J. Super. at ___ (slip op. at 5). The regulatory scheme afforded defendant adequate notice that alpha-PVP was a CDS when he distributed it to Detective Lucariello. In fact, defendant admitted he knew it was illegal to do so at the time the crime was committed. Even if he did not know alpha-PVP was a CDS, "ignorance of the law is no defense." State v. Lisa, 391 N.J. Super. 556, 579 (App. Div. 2007) (citing State v. W. Union Tel. Co., 12 N.J. 468, 493-94 (1953)).

Second, defendant was not charged with or convicted for violating N.J.S.A. 2C:35-5.3a(a) or N.J.S.A. 2C:35-10.3a(a). He was charged with and convicted for violating N.J.S.A. 2C:35-5a(1) and 2C:35-5b(13). Distribution of the quantity of alpha-PVP sold to the undercover detective was already a third-degree crime on the dates of the two sales. Accordingly, defendant was not subjected to a greater penalty as a result of the subsequent amendments to N.J.S.A. 2C:35-5.3a(a) or N.J.S.A. 2C:35-10.3a(a).

The possibility that the Legislature may have mistakenly assumed alpha-PVP was not already a CDS when it amended N.J.S.A. 2C:35-5.3a(a) and N.J.S.A. 2C:35-10.3a(a) does not change the outcome. Such a mistaken premise may have flowed from the fact that alpha-PVP was not an expressly listed substance in the pre-amendment version of those statutes, without considering

29

the long-standing procedure for how DEA-scheduled substances become CDS in New Jersey. Indeed, the Statement accompanying the amendments to those statutes acknowledges: "The U.S. Drug Enforcement Administration temporarily scheduled alpha-pyrrolidinopentiophenone (alpha-PVP) into Schedule I of the Controlled Substances Act on March 7, 2014." Sponsor's Statement to A. 2176 (L. 2017, c. 209). The adoption of the amendments only reinforced what was already prohibited in this State under the law.

B.

Defendant also argues the trial court erred by not dismissing counts one through four of the indictment because: (1) the prosecutor did not properly charge the grand jury; (2) the indictment did not adequately advise defendant of the charges against him; and (3) the use of the term "and/or" in count four renders his conviction for that charge improper (not raised below).

"Once the grand jury has acted, an 'indictment should be disturbed only on the clearest and plainest ground,' and only when the indictment is manifestly deficient or palpably defective." State v. Hogan, 144 N.J. 216, 228-29 (1996) (citation omitted) (quoting State v. Perry, 124 N.J. 128, 168 (1991)). "[T]he decision whether to dismiss an indictment lies within the discretion of the trial court, State v. McCrary, 97 N.J. 132, 144 (1984), and that exercise of

discretionary authority ordinarily will not be disturbed on appeal unless it has been clearly abused." Hogan, 144 N.J. at 229. However, we review the trial court's legal conclusions de novo. Nash, 212 N.J. at 540-41 (citing Harris, 181 N.J. at 415-16).

Although "[a] prosecutor is obligated to charge the grand jury as to the elements of specific offenses," State v. Triestman, 416 N.J. Super. 195, 205 (App. Div. 2010), "a prosecutor's decision on how to instruct a grand jury will constitute grounds for challenging an indictment only in exceptional cases," Id. at 202 (citing State v. Hogan, 336 N.J. Super. 319, 344 (App. Div. 2001)). "Incomplete or imprecise grand-jury instructions do not necessarily warrant dismissal of an indictment; rather, the instructions must be 'blatantly wrong.'" Id. at 205 (quoting Hogan, 336 N.J. Super. at 344).

The State argues defendant waived any objection to the indictment because he entered an open and unconditional guilty plea to all the charges. We agree.

"Generally, a defendant who pleads guilty is prohibited from raising, on appeal, the contention that the State violated his constitutional rights prior to the plea." State v. Knight, 183 N.J. 449, 470 (2005) (quoting State v. Crawley, 149 N.J. 310, 316 (1997)). "A plea of guilty amounts to a waiver of all issues,

including constitutional claims, that were or could have been raised in prior proceedings." State v. Marolda, 394 N.J. Super. 430, 435 (App. Div. 2007) (citing Tollett v. Henderson, 411 U.S. 258, 267 (1973) (finding "a guilty plea represents a break in the chain of events which has preceded" it and concluding a defendant who "has solemnly admitted in open court that he is in fact guilty of the offense . . . may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred" prior to plea entry)).

Our rules provide three exceptions to the general rule of waiver. Notwithstanding entry of a guilty plea, a defendant may appeal: (1) from the denial of a motion to suppress evidence obtained as the result of an allegedly unlawful search and seizure, Rule 3:5-7(d); (2) from the denial of an application for admission into a pretrial intervention program, Rule 3:28-6(d); and (3) with consent of the court and approval of the prosecutor, from any other pretrial order when the issue is preserved by entry of a conditional plea, Rule 3:9-3(f). State v. Smith, 307 N.J. Super. 1, 8 (App. Div. 1997). Those exceptions do not permit a challenge to non-jurisdictional defects in grand jury proceedings. Marolda, 394 N.J. Super. at 435 (citations omitted).

Defendant's plea was unconditional, and the issue concerning the denial of his motion to dismiss the indictment was not preserved under Rule 3:9-3(f).

Accordingly, those issues are waived. In any event, the indictment is not "manifestly deficient or palpably defective." Hogan, 144 N.J. at 229. We discern no clear abuse of discretion, much less plain error.

C.

1.

Defendant contends he was medically unfit to stand trial due to a "chronic heart ailment" that resulted in hospitalization and treatment prior to jury selection. Defendant initially claimed he had suffered a heart attack. His medical records confirmed, however, that he did not suffer a heart attack. The trial court concluded it "was an effort to delay the proceedings."

Whether to grant an adjournment of trial due to a defendant's health difficulties is a matter within the discretion of the trial court. State v. McLaughlin, 310 N.J. Super. 242, 259 (App. Div. 1998); State v. Kaiser, 74 N.J. Super. 257, 271 (App. Div. 1962). The trial court's decision "will not be deemed reversible error absent a showing of an abuse of discretion which caused defendant a 'manifest wrong or injury.'" McLaughlin, 310 N.J. Super. at 259 (quoting State v. Furguson, 198 N.J. Super. 395, 402 (App. Div. 1985)). According to the Kaiser court:

> Among those factors deserving consideration by the court in the exercise of its discretion are medical

reports, personal observation of the accused, the effect of a continuance upon the State's ability to produce evidence at a subsequent date, and whether or not the accused will be better able to stand trial at a later time.

[74 N.J. Super. at 271.]

We also consider "the clarity of the accused's testimony at trial and the conduct of the trial court in granting defendant periods of rest whenever . . . requested." Ibid. (citing State v. Pierce, 27 P.2d 1087, 1088 (Wash. 1933)).

Defendant had been discharged from the hospital prior to the start of trial. He relied on an unsworn note and letter from his treating physician. The trial court indicated it would require live testimony from defendant's physician to further postpone the trial. Defendant did not offer such testimony or indicate he was unable to do so.

Defendant's claim he was medically unfit to stand trial is refuted by the trial record and the transcript of the plea hearing. After being sworn, defendant testified during the plea hearing that he was taking aspirin and nitroglycerin. When asked if the medications affected his ability to think clearly, defendant answered, "I don't think so." When asked if he was thinking clearly that day, defendant answered, "I believe so." When asked if he had any disability or condition which impaired his judgment, defendant stated: "I'm under medical treatment right now, Your Honor, but it's not to impair my judgment." When

34

asked whether he understood what he was doing today, defendant replied, "Yes, sir."

We discern no abuse of discretion by the trial court in denying defendant's request to further adjourn the trial. Defendant has not demonstrated that he suffered a manifest wrong or injury.

2.

Defendant argues the trial court violated his Sixth Amendment right to counsel of his choice by insisting the trial proceed without further delay. We are unpersuaded by this argument.

The Sixth Amendment "entitles 'a defendant who does not require appointed counsel to choose who will represent him.'" State v. Kates, 426 N.J. Super. 32, 43 (App. Div. 2012), aff'd, Kates, 216 N.J. 393 (2014) (quoting United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006)). However, a defendant's right to counsel of choice "is not absolute" and may be balanced against other issues, including the demands of the court's calendar. Id. at 45. A deprivation of the right to counsel of choice "occurs only when the court mistakenly exercises its discretion and erroneously or arbitrarily denies a continuance to retain chosen counsel." Id. at 47.

In exercising its discretion, a trial court should consider the following factors outlined in Furguson:

> [T]he length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case.
>
> [198 N.J. Super. at 402 (quoting and adopting analysis of United States v. Burton, 584 F.2d 485, 490-91 (D.C. Cir. 1978)).]

"Trial judges retain considerable latitude in balancing the appropriate factors." Kates, 216 N.J. at 397 (citing State v. Hayes, 205 N.J. 522, 537-39 (2011)). "They can weigh a defendant's request against the need 'to control [the court's] calendar and the public's interest in the orderly administration of justice.'" Ibid. (alteration in original) (quoting Furguson, 198 N.J. Super. at 402). The Court underscored "that only if a trial court summarily denies an

adjournment to retain private counsel without considering the relevant factors, or abuses its discretion in the way it analyzes those factors, can a deprivation of the right to choice of counsel be found." Ibid. The Court "[did] not suggest that a lengthy factual inquiry is required." Ibid. (citing Kates, 426 N.J. Super. at 53).

Applying those factors, we are satisfied that the trial court did not mistakenly exercise its discretion by denying defendant's request for a trial adjournment and did not violate his Sixth Amendment rights. The record shows that on the day of jury selection, defendant sought to postpone the trial to retain a certified criminal trial attorney. This request came after defendant unsuccessfully sought a postponement based on his medical condition. It also came after the court had already heard and decided the State's in limine motion.

The trial court concluded defendant's intent was to delay. Trial counsel is an experienced attorney. He was defendant's third attorney. Another attorney assisted in the appellate filings and was present during the hearing on the State's in limine motion. Defendant consulted with an additional attorney, John Morris, during the discussion of pleading open. The court also identified another member of the defense team. The assembled defense team apparently consulted with defendant during the State's case-in-chief, the open plea discussions, and

the plea hearing. He then obtained new counsel for the motion to withdraw the guilty plea and sentencing.

Here, unlike in Kates, defendant did not learn on the first day of jury selection that his lead trial counsel expected to be deployed on active duty in the military. 216 N.J. at 394-95. Trial counsel was not new to the case despite the multitude of counsel. Accordingly, defendant has not demonstrated prejudice.

We discern no error or abuse of discretion by the trial court in denying defendant's request to adjourn the trial to retain new trial counsel.

D.

Defendant contends the evidence seized from his residence should be suppressed because the search warrant affidavit did not establish probable cause to search his residence. He argues no sales occurred at his house and no surveillance connected his residence to the undercover buys.

Defendant acknowledges the search warrant affidavit stated that defendant was observed arriving in his Jeep at a location on Shore Road for the first undercover buy, and was then seen returning to his residence. Defendant counters that no one saw him leave his residence on his way to either controlled buy.

"[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are 'supported by sufficient credible evidence in the record.'" State v. Elders, 192 N.J. 224, 243 (2007) (citations omitted). The "findings of the trial judge . . . are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Locurto, 157 N.J. 463, 471 (1999) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We should disturb the trial court's findings "only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" Elders, 192 N.J. at 244 (quoting Johnson, 42 N.J. at 162). However, we do not defer to the trial court's legal interpretations. State v. Gamble, 218 N.J. 412, 425 (2014).

The Warrant Clause of the Fourth Amendment "provides that 'no Warrants shall issue except upon probable cause, supported by Oath or affirmation.'" State v. Gathers, 234 N.J. 208, 220 (2018) (quoting U.S. Const. amend. IV; accord N.J. Const. art. I, ¶ 7).

"It is well settled that a search executed pursuant to a warrant is presumed to be valid and . . . a defendant challenging its validity has the burden to prove 'that there was no probable cause supporting the issuance of the warrant or that

the search was otherwise unreasonable.'" State v. Jones, 179 N.J. 377, 388 (2004) (citation omitted). "[S]ubstantial deference must be paid by a reviewing court to the determination of the judge who has made a finding of probable cause to issue a search warrant." State v. Evers, 175 N.J. 355, 381 (2003). Any "[d]oubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" State v. Keyes, 184 N.J. 541, 554 (2005) (quoting Jones, 179 N.J. at 389).

We "accord substantial deference to the discretionary determination resulting in the issuance of the [search] warrant." State v. Boone, 232 N.J. 417, 427 (2017) (alteration in original) (quoting Jones, 179 N.J. at 388). Our role is to determine whether the warrant application presented sufficient evidence for a finding of probable cause to search the location for the items sought. State v. Chippero, 201 N.J. 14, 32 (2009).

"The application for a warrant must satisfy the issuing authority 'that there is probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched.'" Boone, 232 N.J. at 426 (quoting Jones, 179 N.J. at 388). The probable cause inquiry requires courts to "make a practical, common sense determination whether, given all of the circumstances, there is a fair probability

that contraband or evidence of a crime will be found in a particular place." State v. Marshall, 199 N.J. 602, 610 (2009) (quoting State v. O'Neal, 190 N.J. 601, 612 (2007)).

Defendant ignores the totality of the circumstances, which is the appropriate measuring stick for whether a warrant was based on probable cause. Gathers, 234 N.J. at 221; see also Jones, 179 N.J. at 389 (noting that a court "must consider the totality of the circumstances" in determining if there is probable cause for a search). While the investigating officers did not observe defendant leave his house before embarking to either of the undercover buys, based on the totality of the other circumstances presented in the supporting affidavit, there are facts supporting "a practical, common sense determination" that "there [was] a fair probability that contraband or evidence of a crime" would be found in defendant's vehicle and residence located just down the road from the location of the controlled buys. Marshall, 199 N.J. at 610 (quoting O'Neal, 190 N.J. at 612). The affidavit explained the undercover operation involving surveillance and undercover buys from defendant. Defendant was observed traveling to and from the undercover buys in his Jeep, registered in his name at his residence. He was observed leaving the scene and returning to his residence

after the September 2014 undercover buy. Investigators were able to verify defendant's address through both motor vehicle and parole records.

The search warrant affiant explained, based upon his knowledge, training, and experience, it was common for drug dealers to conduct transactions at a pre-arranged location and store their drugs and cash at home or in their vehicle. The affiant officer then confirmed his statement during his testimony at the suppression hearing. The trial court noted the testifying affiant was under oath and found him credible. The court also found, "it's not an unreasonable leap – Indeed, not a leap at all – to suggest that the residence [on] South Shore Road, held other indicia of illegal activity."

The circumstances detailed in the affidavit support the search warrant court's determination there was a fair probability evidence of a crime would be found in defendant's vehicle and at his residence on South Shore Road. We affirm the trial court's denial of defendant's motion to suppress.

E.

Last, we address defendant's contention that the trial court improperly sentenced him to an excessive term by imposing three consecutive terms on the

42

convictions for distribution and possession with intent to distribute CDS.[8] Defendant does not argue that the length of any of the individual terms imposed is excessive.

Defendant argues the trial court misapplied the Yarbough[9] factors when it found it was "'undisputable' that the crimes were independent of each other, committed on different days, different times." He contends the CDS offenses were similar in nature and close in time. The two distribution offenses involved the same undercover officer and occurred thirteen days apart at the same meeting place. The possession offense involved similar CDS inside defendant's house one week later.

"[Our] review of sentencing decisions is relatively narrow and is governed by an abuse of discretion standard." State v. Blackmon, 202 N.J. 283, 297 (2010). We consider whether the trial court has made findings of fact grounded in "reasonably credible evidence," whether the factfinder applied" correct legal

---

[8]  Defendant acknowledges that N.J.S.A. 2C:39-4.1(d) mandates that the sentence imposed on his conviction for possession of a firearm while committing certain CDS offenses "shall be ordered to be served consecutively to that imposed for any conviction for a violation of any of the sections of chapter 35" enumerated in N.J.S.A. 2C:39-4.1(a). N.J.S.A. 2C:35-5 is one of the chapter 35 offenses enumerated in N.J.S.A. 2C:39-4.1(a).

[9]  State v. Yarbough, 100 N.J. 627 (1985).

principles in exercising . . . discretion," and whether "application of the facts to the law [has resulted in] a clear error of judgment" and to sentences that "shock the judicial conscience." State v. Roth, 95 N.J. 334, 363-65 (1984) (citations omitted). We review a trial judge's findings as to aggravating and mitigating factors to determine whether the factors are based on competent, credible evidence in the record. Id. at 364. "To facilitate meaningful appellate review, trial judges must explain how they arrived at a particular sentence." State v. Case, 220 N.J. 49, 65 (2014); see R. 3:21-4(g).

Pursuant to N.J.S.A. 2C:44-5(a), when a defendant receives multiple sentences of imprisonment "for more than one offense, . . . such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence." N.J.S.A. 2C:44-5(a) does not state when consecutive or concurrent sentences are appropriate. In Yarbough, the Court set forth the following guidelines:

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
>
> (3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:

(a) the crimes and their objectives were predominately independent of each other;

(b) the crimes involved separate acts of violence or threats of violence;

(c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

(d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors;

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense[.]

[100 N.J. at 643-44 (footnote omitted).]

What had been guideline six was superseded by a 1993 amendment to N.J.S.A. 2C:44-5(a), which provides "[t]here shall be no overall outer limit on the cumulation of consecutive sentences for multiple offenses."[10]

The Yarbough guidelines leave a "fair degree of discretion in the sentencing courts." State v. Carey, 168 N.J. 413, 427 (2001). "[A] sentencing

---

[10] L. 1993, c. 223, § 1.

court may impose consecutive sentences even though a majority of the <u>Yarbough</u> factors support concurrent sentences," <u>id.</u> at 427-28, but the court must state its reasons for imposing consecutive sentences, and when a court fails to do so, remand is needed in order for the court to place its reasoning on the record, <u>State v. Miller</u>, 205 N.J. 109, 129 (2011). When a trial court imposes a consecutive sentence, "[t]he focus should be on the fairness of the overall sentence." <u>State v. Abdullah</u>, 184 N.J. 497, 515 (2005).

Here, the crimes did not involve acts of violence or multiple victims. The crimes were committed within about three weeks. Defendant was being sentenced on five counts. The court imposed the same four-year term on counts one and two. The trial court did not discuss or weigh <u>Yarbough</u> factors 3(b), 3(c), 3(d), 3(e), and 5 to the facts of this case. We conclude that a remand for resentencing is compelled. On remand, the trial court shall consider those factors and provide reasons for the imposition of five consecutive sentences and the same sentence on counts one and two. The court's "focus should be con the fairness of the overall sentence." <u>Abdullah</u>, 184 N.J. at 515 (quoting <u>State v. Miller</u>, 108 N.J. 112, 122 (1987)).

F.

Defendant's remaining arguments are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed in part and remanded in part for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0516-16T4